**Jimmie W. MONROE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 46582.

Court of Criminal Appeals of Texas.

Nov. 14, 1973.

E. Brice Cunningham, Dallas (On appeal only), for appellant.

Henry Wade, Dist. Atty., Jerome L. Croston, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

REYNOLDS, Commissioner.

A jury trial conviction for the offense of murder with malice, for which punishment was assessed at fifteen years confinement, is challenged by two assigned grounds of error. The first ground, which is sustained, is that the trial court erred reversibly in refusing to charge the jury on the offense of murder without malice; the second ground, which becomes moot, is that there is insufficient evidence of intent to commit the offense of murder with malice. Reversed and remanded.

On the night of November 28, 1969, Grover David Watley died on a vacant lot in Dallas after being struck by two of three bullets fired from a revolver. That appellant, Jimmie W. Monroe, shot and killed the deceased is not only undisputed, but admitted; disputed, however, are the circumstances of, and the attendant witnesses to, the homicide.

The state's evidence of the events culminating in the homicide was adduced from the deceased's wife, Florence Watley, and

her friend, Catherine Anderson. Their account is that the two women went to the factory where the deceased and the appellant worked. While the two women were waiting for the deceased to quit work, the appellant appeared, made advances and used abusive language to Mrs. Anderson, who rebuffed the appellant. The deceased quit work and all parties, the appellant walking ahead, started toward their respective homes located in the next block across the street. Crossing the street onto a vacant lot that sloped upward, the deceased remonstrated with the appellant, who then was walking backwards facing the deceased, for his conduct toward Mrs. Anderson. The appellant at a distance of six feet from the deceased pulled a revolver from his right pocket with his right hand and fired three shots, the time intervals between which are not shown. At the first shot, the deceased, who previous thereto had stopped still, clutched at his chest and fell backwards. Mrs. Watley went to a nearby house and called an ambulance. Both women agreed that the only other person present was a teenage boy.

The city police officer first on the scene testified that he found no weapon on the deceased and that the only witnesses he could locate were a teenage boy, who did not testify, and the two women. Another city police officer deposed that he heard a broadcast of the occurrence giving the appellant's name and started for the scene. Enroute, he saw the appellant with his wife and small child approximately five to six blocks from the scene and 300 feet from a bus stop. When he stopped his police car at the curb, he observed the appellant give the revolver to his wife. The appellant was arrested and the revolver retrieved. The arresting officer stated that the appellant was not wounded.

According to the pathologist, the deceased met his death from the two bullet wounds. There was no evidence of powder residue in or about the wounds, indicating that the shots were fired from a distance greater than three feet. One bullet entered approximately mid-chest and ranged downward at a forty-five degree angle; the other bullet entered the right abdomen and ranged downward at about one-half the angle of the first bullet. The pathologist agreed that the nature of the wounds is consistent with the state's theory that the appellant was standing on the sloping ground above, and at a distance of some six feet from the deceased when the shots were fired. The pathologist found the deceased's blood to contain ethyl alcohol in an amount exceeding legal intoxication, estimating that about fifteen beers, or nine or ten mixed drinks, would be required to produce the quantum of alcohol present. This approximation is at variance with the testimony of Mrs. Watley, who stated the deceased had drunk only four or five cans of beer some six hours before his death. Neither she nor Mrs. Anderson thought the deceased was intoxicated.

The appellant testified to his account of the homicide. He had quit work at the factory earlier in the afternoon after being paid. He had gone to pay his rent, taking his revolver as protection against robbers. He had put the revolver in his left pocket since he was left handed. As the appellant was returning to his home, walking along the street opposite the factory, the deceased called to him from a parking lot across the street and next to the factory. The appellant crossed the street and approached the deceased, who stated that he wanted to pay the five dollars he had borrowed previously from the appellant. The appellant replied that the deceased could pay the money the next day. The deceased put one hand in his pocket; he had half a bottle of wine in his other hand, and he was drunk. Repeatedly insisting that he wanted to pay the debt then to each reiteration by the appellant that it could be paid the next day, the deceased advanced on the appellant, who backed away. The deceased put the wine bottle on the ground, pulled a knife from his pocket, continued to advance on the appellant, and opened the knife. The appellant, question-

ing why the deceased was using the knife and ". . . pleading not to come up on me with that knife," then pulled and cocked the revolver with his left hand. The appellant affirmed that he was afraid for his life, and he stated that he was scared. The appellant, while running backwards, tripped and fell on his rear. The deceased ". . . was coming over with the knife . . . cutting at my throat" and hit the appellant's hand. The appellant fired three shots. After the first shot, the deceased kept advancing; the appellant shot again and the deceased fell to his knees; and the appellant did not know when he fired the third time. Neither Mrs. Watley nor Mrs. Anderson was present, and the appellant and the deceased were the only persons on the lot during the encounter.

Because he did not know what the deceased's people might do to him, the appellant left the scene. He went home, got his wife and small child, and the three of them went to a bus stop to get a bus to city hall where he was going to surrender. Before the bus arrived, he was arrested.

The testimony of the appellant's wife was that she was looking out the window of their apartment when she heard gunshots. Someone "hollered" to Mrs. Watley that her husband had been shot. Then Mrs. Monroe saw Mrs. Watley running from the next door house where the Watleys lived. Shortly thereafter, the appellant came home, reported the shooting and announced his intention to go to city hall to surrender. The appellant had a deep, bleeding cut on his arm, but no first aid was administered. Mrs. Monroe took the revolver, put it in her pocket, and the three went to the nearest bus stop. While they were waiting for the bus, the appellant was arrested and she delivered the revolver to the officer upon his request. On prior occasions when the deceased came to the Monroes' home, he had a knife and the Monroe child would borrow it to sharpen his pencils.

The defense presented William Robinson. His testimony was that on the night of the homicide he had stopped his vehicle at a stop sign on the street adjacent to the factory and across the street from a vacant lot. With Robinson was a man who had done some work for him and, while stopped, Robinson took the opportunity to pay his employee. Although he said he was not paying attention, Robinson saw a man cross the vacant lot and heard another one call to him. He saw one man, whom he identified in court as the appellant, backing up and heard him repeating, "Get back off of me." The other man had a knife, but Robinson did not see a gun. He thought the two were playing. The appellant fell ". . . and this other guy went on with the knife . . . went down on him with the knife . . ." and then Robinson heard, as he remembered, two shots. Robinson saw no other people present. He left because he did not want to get involved. He did not tell his story to the police. The next morning he told the appellant's cousin he saw the appellant shoot a man. He appeared as a witness at the appellant's request made the day before the trial began.

The trial court charged the jury on murder with malice and on self-defense, but failed to charge on murder without malice, to which the appellant timely objected. The thrust of the state's argument for the correctness of the charge is that the evidence is inadequate to show murder without malice and a charge thereon would be inconsistent with the testimony of self-defense. Admittedly, the state's evidence was sufficient to support the murder with malice indictment and to exclude both murder without malice and the justification of self-defense. Evidenced by the verdict, the jury rejected the appellant's testimony of self-defense, as was its right and prerogative in weighing and believing the evidence, and, considering the evidence under the only other alternative given, returned a murder with malice verdict. Nevertheless, these circumstances are not dispositive of

the question of whether the court should have given a charge on murder without malice.

 It is required by Vernon's Ann. P.C. art. 1257c that where the facts present the issue, the court shall

". . . instruct the jury that murder without malice is a voluntary homicide committed without justification or excuse under the immediate influence of a sudden passion arising from an adequate cause, by which it is meant such cause as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection, . . ."

and shall appropriately apply the law to the factual evidence. The testimony of the defendant alone is sufficient to raise the issue and, if it is raised, the court, without determining the weight or the truth or falsity of the testimony, is bound to submit the issue for jury determination, even in a doubtful case. Lewis v. State, 89 Tex.Cr. R. 345, 231 S.W. 113 (1921). And the fact that the complete defense of self-defense is interposed by the defendant will not deprive him of the right of a proper charge on the issue if it is properly a part of the case. Butler v. State, 121 Tex.Cr.R. 288, 51 S.W.2d 384 (1932).

 Here, the appellant testified to an unprovoked assault by the deceased, partially corroborated by the witness Robinson, and, affirming that he was afraid for his life, stated that he was scared. This testimony was sufficient to raise the question of whether the homicide was committed under the immediate influence of a sudden passion arising from the adequate cause of fear so as to constitute murder without malice. Elsmore v. State, 132 Tex.Cr.R. 261, 104 S.W.2d 493 (1937). Although the jury was privileged to reject the appellant's self-defense testimony, it still had the right to believe the defense testimony of the assault producing fear and to find that fear to adequately cause a sudden passion immediately influencing the appellant to commit a voluntary homicide. If the jury did reach that conclusion, the court's charge furnished no guidance as to how such finding should be announced. Of course, the homicide may not have occurred as the appellant contends, and the jury may not have so found, but since the testimony did present the issue of murder without malice, it was error for the court to refuse to instruct what the law was in the event the jury did adopt that version of the appellant's evidence. Lewis v. State, supra.

Recently in McGee v. State, Tex.Cr. App., 473 S.W.2d 11, and Bryant v. State, Tex.Cr.App., 482 S.W.2d 270, we have had occasion to consider Art. 1257c, supra, and the necessity to charge on murder without malice. In both cases, by a divided Court, we affirmed on the finding that the injured party was not doing anything at the time of the shooting. Such cases have no application here, because appellant testified in the case at bar that the deceased was advancing upon him with an open knife in his hand at the time of the shooting.

The first ground is sustained.

 In view of the sustention of the first ground, the appellant's second contention that the evidence is insufficient to prove a specific intent to commit the offense of murder with malice, for which no authoritative argument is cited, is not reached. It is noted, however, that had the jury been charged properly on the issue of, and declined to find that the appellant committed, murder without malice, the appellant's act of shooting the deceased twice with a deadly weapon would have been sufficient to authorize the jury to find that the appellant was actuated by malice. Bell v. State, 398 S.W.2d 133 (Tex.Cr. App.1965).

For the error in refusing to charge the jury on the law of murder without malice,

 

the judgment must be reversed and the cause remanded.

In the event of a new trial compare Brazile v. State, Tex.Cr.App., 497 S.W.2d 302.

Approved by the Court.