Paul Jackson LUCK, Appellant,

v.

The STATE of Texas, Appellee.

No. 57365.

Court of Criminal Appeals of Texas, En Banc.

Oct. 24, 1979.

Paul J. Chitwood, Dallas, for appellant.

Henry M. Wade, Dist. Atty., W. T. Westmoreland, Jr., Douglas J. Mulder and Jon Sparling, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S MOTION FOR REHEARING

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for murder. After finding appellant guilty, the jury assessed punishment at life.

The deceased, Robert William Elledge, was killed by appellant in Dallas on January 9, 1976. The offense took place in appellant's home after an argument which culminated in the deceased being killed as a result of knife wounds and being shot in the head.

Fearing that his family would soon be home and discover the body of the deceased, appellant decided to dispose of the body. Being unable to move the body, appellant, with the aid of a hatchet and butcher knife, dismembered the body into nine pieces. He then loaded the pieces into his van and disposed of them in various locations in Dallas and Tarrant Counties.

The following day, appellant was arrested at his parents' home in Arlington. With his assistance, police officers were able to recover all portions of the body except for one thigh.

In his first ground of error, appellant maintains that testimony presented during cross-examination of a State's witness was perjured. He contends that the State knew of such perjury and took no actions to correct the witness' testimony.

During its case in chief, the State called the wife of the deceased, Margie Elledge. On direct examination, she testified concerning her husband's employment and the events on the day of the offense. On cross-examination, she denied any type of romantic involvement with appellant. She further denied authorship of several love letters addressed to appellant introduced into evidence by the defense.

The trial court appointed an attorney to counsel with the witness concerning the consequences of giving false testimony. The court further ordered the witness to give a handwriting exemplar. A questioned documents examiner testified that in his opinion, the letters in question were written by Elledge. Lastly, in an uncontradicted statement, the prosecutor informed the court outside the presence of the jury that two weeks prior to trial, he had told defense counsel that Elledge would deny authorship of the letters. At no point during her testimony on direct was the witness questioned by the State concerning her relationship, if any, with appellant.

The State is not allowed to obtain a conviction through the knowing use of perjured testimony. *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217. Furthermore, reversal must follow if the prosecutor presents a false picture of the facts by failing to correct its own testimony when it becomes apparent that it was false. *Napue v. Illinois*, supra; *Means v. State*, 429 S.W.2d 490, Tex.Cr.App. Lastly, the appellant bears the burden of showing that the testimony used by the State was in fact perjured. *See, Williams v. State*, 513 S.W.2d 54, Tex.Cr.App.; *Nelson v. State*, 511 S.W.2d 18, Tex.Cr.App.

We need not address the issue of whether the witness' testimony was in fact perjured. Appellant has failed to meet the threshold issue of demonstrating that the State used such alleged perjured testimony in obtaining his conviction. As noted above, the testimony to which appellant complains was developed solely during his cross-examination of the witness. At no time did the State present any evidence of the presence or absence of a romantic involvement between appellant and Elledge. We find appellant's first ground of error to be without merit.

In his second ground of error, appellant contends that the trial court erred in admitting into evidence six photographs depicting various portions of the victim's body. Appellant maintains that such photographs were admitted solely to inflame the jury and prejudice appellant.

Officer J. W. Johnson of the Dallas Police Department testified that the photographs accurately portrayed various body parts found in locations throughout Dallas and Tarrant Counties.

A photograph is merely a graphic portrayal of oral testimony; thus, if a verbal description of the body at the scene of a homicide is admissible, then a photograph of the scene described is also admissible. *Welch v. State*, 576 S.W.2d 638, Tex.Cr. App.; *Cerda v. State*, 557 S.W.2d 954, Tex. Cr.App.; *Martin v. State*, 475 S.W.2d 265, Tex.Cr.App. A verbal description of the body is admissible to throw light on the transaction and reveal its general nature. *Campbell v. State*, 525 S.W.2d 4, Tex.Cr. App. We find that the photographs in question depicting the physical condition of the body as well as the locations in which portions of the body were found were properly admitted into evidence. No error is shown.

In his third ground of error, appellant contends that the trial court erred in failing to submit his specially requested charge on the issue of voluntary manslaughter. Appellant maintains that the issue was raised when Officer Johnson related the sequences of events leading up to the murder as told to him by appellant.

Officer Johnson stated that appellant told him that on the day of the offense, the deceased came to appellant's home and accused appellant of having an affair with the wife of the deceased. After the deceased made this accusation, he pulled out a knife and told appellant that he was going to kill him. The deceased then stabbed appellant. The two men then scuffled with appellant eventually breaking away and going into the bathroom to obtain his gun. The deceased took the gun away from appellant and hit him on the head with the butt. At this point, appellant was able to get the knife away from the deceased and stab him. When the deceased dropped appellant's gun, appellant picked it up and shot the victim in the head. Johnson related that at no point did appellant indicate that he was in fear of the deceased. Appellant did not testify at trial.[1]

On original submission, the panel concluded that the trial court erred in failing to submit appellant's requested charge on the issue of voluntary manslaughter. In its motion for rehearing, the State contends that the evidence only presented the defensive issue of self-defense and that a charge on voluntary manslaughter was not required.

V.T.C.A. Penal Code, Sec. 19.04 provides:

"(a) A person commits an offense if he causes the death of an individual under circumstances that would constitute murder under Section 19.02 of this code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause.

"(b) 'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

"(c) 'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection."

A charge on voluntary manslaughter is mandatory only when there is evidence that the defendant acted under the immediate influence of sudden passion arising from an adequate cause. *Cerda v. State*, supra; *McCartney v. State*, 542 S.W.2d 156, Tex.Cr.App. Where the issue of murder without malice is raised by the evidence, the fact that the evidence also raises the issue of self-defense and the accused is granted a requested instruction on the same does not deprive the accused of his right to an instruction on murder without malice. *Ray v. State*, 515 S.W.2d 664, Tex. Cr.App.; *Monroe v. State*, 501 S.W.2d 639, Tex.Cr.App. However, when the evidence only raises the issue of self-defense, a defendant is not entitled to a charge on voluntary manslaughter unless there is evidence

1. At a hearing out of the presence of the jury the court determined that appellant's oral statement to Johnson was voluntarily made and that it contained facts, found to be true, which conduced to establish the appellant's guilt.

that the offense occurred under the influence of sudden passion arising from an adequate cause. *See, Jones v. State*, 504 S.W.2d 906, Tex.Cr.App.; *Foster v. State*, 493 S.W.2d 812, Tex.Cr.App.

 In the instant case, we can find no evidence presented at trial which would raise the issue that at the time of the offense, appellant was acting under the immediate influence of sudden passion arising from an adequate cause. While the initial attack by the deceased raised the issue of self-defense, there was no showing that appellant stabbed and shot the deceased under circumstances which would constitute the offense of voluntary manslaughter. We conclude that absent such evidence, the trial court did not err in refusing appellant's requested charge on voluntary manslaughter. Appellant's third ground of error is overruled.

In his fourth ground of error, appellant contends that the trial court erred in overruling his objection to the charge given to the jury concerning self-defense. Appellant maintains that the charge was erroneous in that it did not inform the jury that the State had to disprove beyond a reasonable doubt the issue of self-defense.

Appellant relies on *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 589. In *Mullaney*, the Supreme Court held that a Maine law which required the defendant to establish by a preponderance of the evidence that he acted in the heat of passion on sudden provocation, in order to reduce murder to manslaughter, violated due process requirements. The Court held that the due process clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case. *Mullaney v. Wilbur*, supra at 704, 95 S.Ct. 1881. In footnote 28 of *Mullaney*, supra, the Supreme Court stated: "Many states do require the defendant to show that there is 'some evidence' indicating that he acted in the heat of passion before requiring the prosecution to negate this element by proving the absence of passion beyond a reason-

able doubt. . . . Nothing in this opinion is intended to affect that requirement." At 701, 95 S.Ct. at 1891.

Self-defense is a justification excluding criminal responsibility under V.T.C.A. Penal Code, Sec. 9.31. As a justification, self-defense is likewise a defense. *See*, V.T.C.A. Penal Code, Sec. 9.02. Under V.T.C.A. Penal Code, Sec. 2.03(d), when a defense is submitted to the jury, the court is to instruct the jury that a reasonable doubt on the issue requires that the defendant be acquitted. The Practice Commentary to Sec. 2.03(d) notes:

". . . The effect of Subsection (d) is to require the state to disprove a defense beyond a reasonable doubt after the issue has been properly raised by the evidence. In other words, the defendant has the burden of producing evidence to raise a defense, but the prosecution has the final burden of persuasion to disprove it."

 In the instant case, the charge of the court required the jury to acquit appellant if they believed that he was acting in self-defense or the jury had a reasonable doubt thereof. The court further instructed the jury that the burden of proof beyond a reasonable doubt was on the State. Lastly, the court instructed the jury on the presumption of innocence.

Clearly, when the charge is viewed as a whole, it placed the burden on the State to show beyond a reasonable doubt that appellant was not acting in self-defense. We find that the trial court did not err in overruling appellant's objection to the charge on self-defense. No error is shown.

In his fifth ground of error, appellant contends that the trial court erred in failing to give his requested instruction limiting the jury's consideration of an alleged extraneous offense. Appellant maintains that the evidence presented concerning the dismemberment and disposal of the victim's body constituted the extraneous offense of abuse of a corpse under V.T.C.A. Penal Code, Sec. 42.10(a)(1).

 Where an offense is one continuous transaction, or another offense is part of

the case on trial or blended or closely interwoven, proof of all such facts is proper. *Welch v. State*, 543 S.W.2d 378, Tex.Cr. App.; *Johnson v. State*, 510 S.W.2d 944, Tex.Cr.App. Such an extraneous offense is admissible to show the context in which the criminal act occurred; this has been termed the "res gestae," under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that they may realistically evaluate the evidence. *Albrecht v. State*, 486 S.W.2d 97, Tex.Cr.App. Therefore, it is not necessary to give a limiting instruction on an extraneous offense which constitutes a part of the res gestae of the offense for which an accused is on trial. *King v. State*, 553 S.W.2d 105, Tex.Cr.App.; *Arivette v. State*, 513 S.W.2d 857, Tex.Cr.App.

Appellant's reliance on *Sparks v. State*, 366 S.W.2d 591, Tex.Cr.App.; *Springfield v. State*, 172 Tex.Cr.R. 341, 356 S.W.2d 940; and *Ernster v. State*, 165 Tex.Cr.R. 422, 308 S.W.2d 33, is misplaced. In each of these cases, an extraneous offense was admitted on a theory other than to show the context in which the charged offense occurred.

█ We conclude that in the instant case, evidence concerning dismemberment and disposal of the deceased's body was properly admitted as res gestae of the murder. Such being the case, the trial court was not required to give appellant's requested instruction. Appellant's fifth ground of error is overruled.

In his sixth ground of error, appellant contends that the trial court erred in refusing to submit his specially requested charge on circumstantial evidence.

Officer Johnson testified that following his arrest, appellant stated that he killed the deceased. Johnson related that appellant told him that he stabbed the deceased twice and then shot him in the head.

█ A charge on circumstantial evidence is required only when the evidence of the main fact essential to guilt is purely and entirely circumstantial. *Ransonette v.*

*State*, 550 S.W.2d 36, Tex.Cr.App. When there is an admission or confession to the criminal act, such evidence is direct, thereby relieving the court of the necessity of giving a charge on the law of circumstantial evidence. *Sloan v. State*, 515 S.W.2d 913, Tex.Cr.App.; *Hurd v. State*, 513 S.W.2d 936, Tex.Cr.App. Such an admission or confession must unequivocally admit the facts charged. *Martinez v. State*, 151 Tex.Cr.R. 316, 207 S.W.2d 387. If it is only by process of inference from an admission that it can be determined that the accused was a guilty participant, a court should give a circumstantial evidence charge. *Ridyolph v. State*, 545 S.W.2d 784, Tex.Cr.App.

█ In the instant case, there is direct evidence of appellant's commission of the offense. This evidence is a result of the admission appellant made to Officer Johnson. We find that such evidence being present, the trial court was not required to submit appellant's requested charge on circumstantial evidence. No error is shown.

The State's Motion for Rehearing is granted and the judgment is affirmed.

PHILLIPS, Judge, dissenting.

I dissent to the majority's conclusion that there was no evidence presented at trial to raise the issue of voluntary manslaughter.

Officer Johnson testified as follows concerning statements that appellant made to him during an interview at appellant's parents' house:

Q Why did [appellant] say he killed Mr. Elledge?

A You want me to start at the first?

Q Yes.

A He stated that he was home, that he took his daughter to school, had car trouble, came home, fixed his car, and he was waiting until lunch time to go to work, and he stated that he was inside his home, and Mr. Elledge came over and knocked on the door, and he went to the door and saw who it was and asked him in, and he said Mr. Elledge accused him, or told him he knew he had been going with his wife.

THE COURT: Excuse me a moment. When you relate this story, could you be more specific as to who the hes and hims are, as best you could, just use the names because after awhile we kind of hear outself [sic] coming back.

THE WITNESS: Yes, sir. Paul Luck said he heard a knock at the door, and he went to the door and he saw Robert Elledge at the door, and Paul Luck asked Mr. Elledge—invited him into his home, into the living room area. Paul Luck said Robert Elledge told him that he had something he wanted to talk to him about, and Paul Luck asked Robert Elledge what this was, and Robert Elledge told Luck that he knew he had been going with his wife, Margie Elledge, and he stated that he pulled out a knife, and said he was going to kill him.

THE COURT: Wait a minute. Luck said who pulled out a knife, and who was going to kill him.

THE WITNESS: I am sorry. Paul Luck said Robert Elledge pulled out the knife and Robert Elledge told Paul Luck that he, Robert Elledge, was going to kill him, and stated he stabbed him once in the chest, at this time.

Q (BY MR. CHITWOOD) All right, what did he tell you happened after that?

A He stated—Paul Luck stated that he and Robert Elledge scuffled around in the living room, and that he ran through the kitchen into the bathroom to get his gun, and he stated he picked up his gun and looked around. He looked up and Robert Elledge was coming for him, and he said Robert Elledge took the pistol away from him and hit him in the head—Paul Luck stated he took the knife away from Robert Elledge and stabbed him one more time. Paul Luck stated that Robert Elledge dropped the pistol and Paul himself, Paul Luck picked the pistol up and shot him one time in the head, and stated that Robert Elledge fell to the bathroom floor.

Q All right, now, Officer, isn't it a fact that Paul Luck told you that he was stabbed by Mr. Elledge?

A That's correct.

Q And that thereafter, he went into the kitchen, hurriedly, of course, and found the butcher knife?

A That's correct.

\* \* \* \* \* \*

Q Do you know—did he tell you whether or not, at the time he shot Elledge, whether he was standing up, sitting down or what position he was in?

A He said Robert Elledge was standing up when he shot him in the head.

Q Was standing up when he shot him in the head?

A That's what he said.

Q In the bathroom?

A Yes, sir.

\* \* \* \* \* \*

Q And had he not, during these conversations, told you that he was having an affair with Mrs. Elledge?

A He did.

Q And that he had reason to fear Mr. Elledge because of this?

A He didn't say that he feared him, he called Mr. Elledge by name though.

Q Well, did he—incidentally, how big a man—you saw Mr. Elledge, how big a man would you estimate him to be from what you saw?

A From the standpoint of height and weight, it would just be purely a guess. I would say 245 to 250.

Q 245 to 250 pounds?

A Yes, sir, that would be my rough estimate.

In *Ray v. State*, 515 S.W.2d 664 (Tex.Cr. App.1974), we stated:

The testimony of the defendant alone is sufficient to raise the issue [of murder without malice] and, once it is raised, the court, without determining the weight or the truth or falsity of the testimony is bound to submit the issue for jury determination. *Lee v. State*, Tex.Cr.App., 504 S.W.2d 504; *Monroe v. State*, Tex.Cr. App., 501 S.W.2d 639; *McGee v. State*,

Tex.Cr.App., 473 S.W.2d 11; *Lewis v. State*, 89 Tex.Cr.R. 345, 231 S.W. 113. Where the issue of murder without malice is raised by the evidence, the fact that the evidence also raises the issue of self-defense and the accused is granted a requested instruction on the same does not deprive the accused of his right to an instruction on murder without malice. *Monroe v. State*, Tex.Cr.App., 501 S.W.2d 639; *Lewis v. State*, 89 Tex.Cr.R. 345, 231 S.W. 113.

The evidence in *Ray* showed that as a result of a disagreement the complainant attacked the defendant which led the defendant to fear for his life. The Court held that the issue of assault with intent to murder without malice was raised. We have reached the same conclusion in other cases that involved similar facts. See, e. g., *Armentrout v. State*, 515 S.W.2d 297 (Tex.Cr.App.1974); *Monroe v. State*, 501 S.W.2d 639 (Tex.Cr. App.1973); *Lewis v. State*, 89 Tex.Cr.R. 345, 231 S.W. 113 (1921).

The testimony of Officer Johnson shows that appellant was in immediate danger of losing his life at the hands of a man much larger than he. The man was clearly enraged about his wife's affair with appellant. Anyone in appellant's position would have been terrified for his life in the face of such a ferocious and determined attack. Photographs taken of appellant after the attack show multiple stab wounds on his head, chest, and left arm. To say that the evidence does not raise the issue of whether appellant killed Elledge under the immediate influence of sudden passion arising from an adequate cause, namely terror, is to wholly ignore the circumstances surrounding Elledge's death. It is also to ignore the express terms of the voluntary manslaughter statute. See Section 19.04 of the Penal Code.

Appellant's failure to testify that he was in fear for his life does not preclude a charge on voluntary manslaughter. This Court long ago held that it is not necessary that the accused testify to the passion that is required to establish the offense, so long as the facts in evidence raise the issue.

*Thompson v. State*, 96 Tex.Cr.R. 87, 256 S.W. 279 (1923); *Steen v. State*, 88 Tex. Cr.R. 256, 225 S.W. 529 (1920).

This case cannot be distinguished on its facts from *Ray*, supra, or its predecessors that I cited. The majority seems to be overruling these cases *sub silentio*.

I dissent.

ROBERTS and CLINTON, JJ., join in this opinion.