**Randy Edward WALLS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–87–00093–CR.

Court of Appeals of Texas, San Antonio.

Jan. 13, 1988.

Jose Eduardo Pena, Laredo, for appellant.

Joe Flores, Asst. Dist. Atty., Laredo, for appellee.

Before BUTTS, CANTU and REEVES, JJ.

BUTTS, Justice.

Appellant was indicted for murder, a first degree felony, and convicted by a jury of the lesser included offense of voluntary manslaughter. Punishment was assessed at twenty years' confinement.

Two points of error are raised on appeal: First, that the evidence is insufficient to sustain a conviction for the offense of voluntary manslaughter because the State failed to show beyond a reasonable doubt that appellant did not act in self defense. Second, that the evidence is insufficient because the State failed to prove beyond a reasonable doubt that appellant was not justified in using deadly force to prevent the alleged victim's imminent commission of aggravated sexual assault. We will address these points together.

The indictment charged that appellant caused the death of Oscar Domingo Garcia by knowingly stabbing him with a knife. The evidence included testimony by a pathologist that the cause of death was blood loss from a total of 23 stab wounds including wounds on the head, back, chest, abdomen and legs. Two of the wounds did not appear to have bled, indicating that they were inflicted after the death of the victim. The body was discovered by a co-tenant of the deceased near the front door inside the residence.

There was testimony that the deceased had a homosexual lover. Police and paramedic personnel testified that there was a blood trail from the front door to the bathroom and the bedroom. When paramedic personnel arrived, a video cassette recorder in the bedroom was playing a homosexual pornographic movie. Police officers photographed the scene and collected evidence including several beer bottles found in the bedroom. A fingerprint on one of the beer

bottles matched the appellant's left index finger.

Following his arrest, appellant made an oral statement and a written statement describing the events leading up to the victim's death: appellant and the deceased had been drinking and watching television at the deceased's residence. The deceased began playing a homosexual pornographic movie on the video cassette recorder. When appellant went to the restroom, the deceased followed him with a knife and told him to undress. The deceased laid the knife down and appellant grabbed the knife and stabbed the deceased to defend himself. Appellant then ran to the door of the apartment in an attempt to escape, but the deceased followed him and attacked him again. Appellant then inflicted additional stab wounds with the knife.

Appellant's version of the events was contradicted by the testimony of the State's blood spatter expert witness who opined that the blood stains were not consistent with appellant's statement. According to the expert, the bloodstains indicated that it was the deceased and not the appellant who was standing over the toilet in the bathroom. The blood spatter on the wall of the bathroom was consistent with the deceased being up against the wall. The bloodstains in the vicinity of the front door indicated that the deceased and not the appellant was against the front door.

Appellant's oral and written statements were consistent with his testimony. He testified he believed that if he had not picked up the knife, Garcia "probably would have killed" him.

The State presented in rebuttal the testimony of Max Courtney, a forensic scientist, whose testimony was based on extensive photographs of the crime scene. Courtney testified that appellant's statement was not entirely consistent with the photographs of the crime scene.

According to appellant, he was standing over the toilet urinating when the deceased came into the bathroom with a knife and told appellant to undress. Appellant's statement and testimony are that the deceased laid the knife down and appellant grabbed the knife and stabbed the deceased once in the stomach as appellant was standing over the toilet. In addition appellant testified that as he was leaving the bathroom, the deceased attempted to stop him and appellant cut him on the side of the face and head.

Appellant's version is controverted by Courtney's testimony that blood spatters in the bathroom indicate that it was Garcia and not the appellant who was standing over the toilet and was up against the wall or very close to the wall when the blood was actually flowing. In addition, photographs in evidence show that Garcia was found with his shorts unfastened and opened.

Appellant testified that following the fight in the bathroom, he ran to the front door of the house in an attempt to escape. The deceased followed him and attacked him at the front door, leading to additional stab wounds inflicted in self-defense.

However, Courtney stated that the blood stains around the front door of the house were not consistent with flight of the appellant because

> In my opinion, the victim, and not the actor, is against the front door in very close proximity to the front door, bleeding with blood being projected onto the wall, being dropped onto the floor, which is not being smeared in the struggle as it is back several feet away from the door.

Courtney gave the following analysis to substantiate his opinion that appellant's version was inconsistent with the photographic evidence.

> A: With respect to what happens at the front door, it is substantially the blood on the front door, particularly on the front door knob, down below the knob, and also on the wall to the left of the door knob, and rising up. In addition to the bloodstains down on the floor, below the door and door knob. Also, there are bloodstains in the bathroom which are portrayed in State's Exhibits 13, 14, and 7, which as I read the defendant's statement are again somehow not quite consist-

ent with what I read because, if the defendant is standing at the toilet, and the victim is standing between the door and the toilet, I believe that there are too many bloodstains that have to come directly from the victim back around the area of the toilet. I think that the position of the victim had to be over, by, and around the toilet.

Q: So, then it's your opinion that the victim was possibly in front of the toilet?

A: It would be my opinion that he would be very close to the toilet, yes.

Q: Okay. Is it possible that the bloodsmear, or stain that is up against the wall of the bathroom tile, over here (indicating) that it would be consistent with the defendant being up against the wall?

A: With the defendant being up against the wall—

Q: Yes.

A: Not at the time the bloodstain is deposited. It would be consistent with the victim being up against the wall, or very close to the wall.

Q: Why would that be?

A: The direction of the blood is emanating from a position very close to that wall, and that is going to place the defendant, in my opinion, very close to the wall when the blood is actually flowing.

Regarding the struggle between the appellant and deceased, Courtney had this to say when asked about the duration of the struggle in the bathroom.

A: It would really have to depend on when the bleeding started. The struggle could have taken place there for sometime before a great deal of blood was flowing.

Q: Why do you say that?

A: If the person was not bleeding, then there would not really be any signs left of a struggle.

Q: Based upon your views of the photographs, how many places would you say there might have been a struggle, besides the bathroom?

A: Are we limiting it to these six photographs I'm looking at?

Q: Yes.

A: Okay. I see two places where there is a struggle, in my opinion.

Q: Can you explain?

A: Okay, that would be in the bathroom, in the area around the toilet. Based on the number of medium velocity, and dropped bloodstains I see in that area. And also, the area away from the door, and I'm going to estimate about three feet into the room away from the door, and about three feet to the left of the front as you're standing in the room and looking out. In fact very close to the potted tree that is turned over, because of the smeared and dropped bloodstains that appear there in that area.

Finally, appellant relies on TEX.PENAL CODE ANN. § 9.31(a) (Vernon 1974), which provides in pertinent part: "[A] person is justified in using force against another when and to the degree he reasonably believes that force is immediately necessary to protect himself against the other's use or attempted use of unlawful force."

He applies § 9.31 in conjunction with § 9.32 which provides in pertinent part:

A person is justified in using deadly force against another:

(1) if he would be justified in using force against the other under Section 9.31 of this code;

(2) if a reasonable person in the actor's situation would not have retreated; and

(3) when and to the degree he reasonably believes the deadly force is immediately necessary:

(A) to protect himself against the other's use or attempted use of unlawful deadly force; . . .

(B) to prevent the other's imminent commission of . . . sexual assault, aggravated sexual assault . . .

TEX.PENAL CODE ANN. § 9.32 (Vernon Supp.1988).

Appellant relies upon subsections (A) and (B) to justify his own use of deadly force. His second point of error specifically addresses the failure of the State to disprove justification in using deadly force because of the imminent commission by the deceased of aggravated sexual assault.

Of benefit in our consideration of appellant's points of error is the discussion in *Luck v. State*, 588 S.W.2d 371 (Tex.Crim. App.1979) Self-defense is a justification excluding criminal responsibility under § 9.31, *supra*. Therefore, TEX.PENAL CODE ANN. § 2.03(d) (Vernon 1974) requires the trial court to instruct the jury that a reasonable doubt on the issue requires that the defendant be acquitted. *Luck v. State, supra* at 375. It was noted that § 2.03(d)'s effect is to require the State to disprove a defense beyond a reasonable doubt after the issue has been properly raised by the evidence.

In the instant case the charge required the jury to acquit appellant if they believed he was acting in self-defense or the jury had a reasonable doubt thereof. The jury was instructed that the burden of proof beyond a reasonable doubt was on the State. The instruction included a charge on the presumption of innocence. *See Luck v. State, supra.*

Whether or not appellant was justified in his actions and whether he was acting in self-defense were questions for the jury to determine. Appellant's oral and written statements and his testimony were controverted by the evidence of the expert witness and photographs of the scene. The jury could resolve conflicts in the evidence by believing some witnesses and not others or by accepting or rejecting a witness' testimony in whole or in part. *Losada v. State*, 721 S.W.2d 305, 309 (Tex.Crim.App. 1986) (en banc). In this case, the jury resolved the questions and found appellant did not act in self defense and, therefore, was not justified in killing the deceased. The trial court properly charged the jury on the fact question of self-defense. *See Escamilla v. State*, 464 S.W.2d 840, 841 (Tex.Crim.App.1971).

Viewing all the evidence in the light most favorable to the prosecution, we hold that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *McGoldrick v. State*, 682 S.W.2d 573, 577 (Tex.Crim.App.1985) (en banc). We will not substitute our judgment for that of the jury. The points of error are overruled.

The judgment is affirmed.