TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00507-CR







Terrence Zachery Price, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 46,223, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING







PER CURIAM


 After a jury trial, Terrence Zachery Price was convicted of attempted murder and
sentenced to fifteen years in prison. He contends on appeal that the trial court erred by misapplying the
intent requirement in the instruction, refusing to allow testimony about the victim's past violence, and
refusing to submit the issue of sudden passion to the jury. We will affirm the judgment.

 Price does not dispute that he beat Emma Roby severely; the questions on appeal surround
justifications for that beating. Price was living with Roby and her children. On the day of the beating, she
confronted him with a problem in their relationship. He responded by writing a letter stating that they
needed to either improve communications or go their separate ways. He went out for the evening to let
her read the letter while he was gone. When he returned around 11 p.m., he found the letter torn in the
trash. Price went to the bedroom where Roby was sleeping on Price's side of the bed. What happened
next is disputed.

 Roby testified that Price asked her to move over. The next thing she remembered was a
sharp pain in her back, followed by a prolonged beating involving his fists, a lamp, and a clock radio. She
denied trying to hit him.

 The police testified that, when they arrived, they heard Price yelling that he was going to
kill her. Inside the house, they found him on the bed holding a lamp over Roby who was covered in blood.

 Price testified that, when he asked Roby to move over so he could get into bed, she said
that, if he wanted to leave, he should just leave and not write her letters. She then attacked him while he
undressed by hitting and scratching him. He fended her off and told her not to touch him. She threw a
flower pot at him, hit him again, threw the lid of a cookie jar, and hit him on the head repeatedly with the
jar lid until it broke. She then slashed at his throat, upper torso, and genitals with a lid shard saying she was
going to kill him; she almost severed one of his fingers. He felt his life was threatened and attempted to take
the shard from her. He hit her with the lamp and his fists and held her down to do so. Once he took the
shard away, he told her to call 911 so they could get medical attention. He then began to dress and gather
some things to leave. He admitted that he was belligerent when the police arrived, but said he was upset
because they would not listen to him.

 The upstairs neighbor said she heard Price warning Roby to stay away from him. She
called 911 when she heard Roby plead and scream for help.

 The court charged the jury on attempted murder, self-defense, and aggravated assault. The
jury convicted Price of attempted murder.

 By his first two points of error, Price complains that the court erroneously failed to limit the
charge's definitions of knowingly and intentionally to the result of his conduct rather than the conduct itself. 
He is correct. Murder is a "result of conduct" crime, so an instruction that allows conviction merely for
intending the conduct without intending the result (death or serious bodily injury) is erroneous. Cook v.
State, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994). We must proceed to conduct a harm analysis. Id.
at 491. Because Price preserved error by objecting to the instruction at the trial court, we must reverse
if there was some harm to the defendant. Tex. Code Crim. Proc. Ann. art. 36.19 (West 1981); Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). As part of the analysis, we must decide if the
application paragraph properly limited the culpable mental states. Cook, 884 S.W.2d at 492, n.6. In this
case, it did, imposing an additional burden upon the State. The court charged in relevant part:


 if you find from the evidence beyond a reasonable doubt that on or about the 16th day of
February, 1996, in Bell County, Texas the defendant did intentionally or knowingly
attempt to cause the death of an individual, Emma Roby, by then and there intentionally
or knowingly striking the said Emma Roby on or about the head, face or body with a
deadly weapon ... you will find the defendant guilty of the felony offense of Attempted
Murder.



(Emphasis added.) The first italicized portion properly attaches the culpable mental state to the result of
the conduct. The second italicized portion unnecessarily attaches the culpable mental state to the conduct
itself. The unnecessary attachment is not harmful because it is presented in the conjunctive; that is, the State
had to prove not only that he intentionally or knowingly attempted to kill Roby, but also that he intentionally
or knowingly struck her. The latter is surplusage that did not harm Price. He contends that the State's jury
argument about the unequivocal evidence that Price struck Roby proves harm. The State did not argue,
however, that hitting alone was enough; the State had to prove Price hit her, and its argument that her
testimony was sufficient to convict Price leaves room for an inference of intent to kill from the severity of
her injuries and his shouts. We conclude there was no harm to Price and overrule points one and two.

 By points three and four, Price complains about the exclusion of testimony from Roby's
former companions about Roby's violence toward them. We review the exclusion of evidence for an abuse
of discretion. Montgomery v. State, 810 S.W.2d 372, 390-93 (Tex. Crim. App. 1986) (op. on reh'g). 
The standard of review requires us to be concerned, not with the propriety of the trial's outcome, but with
the integrity of the trial's process. Harris v. State, 790 S.W.2d 568, 587-88 (Tex. Crim. App. 1989).


[T]he reviewing court should focus not on the weight of the other evidence of guilt, but
rather on whether the error at issue might possibly have prejudiced the jurors'
decision-making; it should ask not whether the jury reached the correct result, but rather
whether the jurors were able properly to apply law to facts in order to reach a verdict.


Id. If evidence shows that the defendant acted in self-defense, evidence of the victim's previous acts of
aggression can be admitted to show that the victim was the aggressor in this case. Thompson v. State,
659 S.W.2d 649, 654 (Tex. Crim. App. 1983). If the evidence is offered to show that the victim was the
aggressor (not to prove the defendant's state of mind), the defendant need not show he knew during the
altercation about the victim's previous acts of aggression. Id. There is no set recency requirement for
relevance of this evidence. Gonzales v. State, 838 S.W.2d 848, 859 (Tex. App.--Houston[1st Dist.]
1992, pet. dism'd).

 Price made bills of exception preserving the testimony of two former companions of Emma
Roby. Harold Roby, her ex-husband, testified that she assaulted him with her hands twice--once when
he told her he wanted a divorce and once when he went back to their home to get his medical records. 
Although she blocked the doors and hit him with her fists both times, he escaped without hitting her. He
also said that she threw objects at him during arguments. Christopher Randolph, a former live-in boyfriend,
testified that she attacked him twice after their relationship ended. The first time was when he returned to
the house to get some belongings and she refused to allow him to take them. When he told her she was
not keeping his belongings she lunged at him and he fended her off. He then arranged to have movers pick
up his belongings and take them to a mini-warehouse. She jumped on him at the mini-warehouse as he
waited for the movers. He pinned her on the ground to stop her attack.

 Any error in the exclusion of the evidence was harmless. The proffered testimony, if
believed, showed that Roby had initiated violence toward prior partners when their relationships were
ending. Though the evidence could be probative to show that she began the altercation here and to
challenge her story that she did not provoke the attack, it does not show a propensity to use deadly force. 
This distinction renders any error in the exclusion of the evidence harmless. To find Price guilty of
attempted murder, the jury must have found that he used deadly force. Therefore, to show harm from the
exclusion of evidence, Price had to show that the exclusion of evidence prevented him from showing that
Roby used deadly force against him and thus that his force was justified. Because the excluded evidence
did not show a propensity to use deadly force, its exclusion did not harm his defense. Cf. Fry v. State,
915 S.W.2d 554, 561 (Tex. App.--Houston[14th Dist.] 1995, no pet.) (person who had carried a tent
stake earlier, but had dropped it, then reached into pocket while telling someone else to "get the gun" did
not adequately provoke use of deadly force by another).

 Further, there was ample evidence that Price went beyond merely defending himself and
moved onto offense. In Fry, the court held that the exclusion of evidence regarding the victim's past
violence was harmless because the jury would not have credited the self-defense theory. Id. at 561. The
victim in Fry was not displaying deadly force and was obviously leaving when shot twice in the back. Id. 
Although Price testified that Roby hit him, bit him, threw objects at him, and slashed at him with a pottery
shard (nearly severing his finger), the jury nevertheless declined to credit his self-defense theory. We
conclude that, because only a finding that Roby used deadly force first would have led to a different result,
the exclusion of evidence of the victim's past use of non-deadly force did not prejudice the jurors' decision-making process. We overrule points three and four.

 By point of error five, Price complains that the court erred by refusing to give the jury his
requested charge on sudden passion. Had the jury found that he acted under the influence of sudden
passion, the offense of attempted murder could have been reduced to a third degree felony. See Tex. Penal
Code Ann. §§ 15.01(d) & 19.02(d) (West 1994). To be entitled to his requested instruction, some
evidence must have shown that he attempted the murder under the immediate influence of sudden passion
arising from adequate cause. Tex. Penal Code Ann. § 19.02(d) (West 1994).

 The evidence did not show the requisite level of provocation or passion. Courts have
distinguished between self-defense and sudden passion from adequate cause. (1) To be adequate, the cause
must be that which would "commonly produce a degree of anger, rage, resentment, or terror in a person
of ordinary temper, sufficient to render the mind incapable of cool reflection." Tex. Penal Code Ann. §
19.02(a)(1) (West 1994). In Luck, the victim pulled out a knife, told the defendant he was going to kill
him, and stabbed him; after a scuffle, the victim took the defendant's gun away and hit him on the head with
the butt. Luck v. State, 588 S.W.2d 371, 374 (Tex. Crim. App. 1979). The defendant then took the
weapons and stabbed and shot the victim. Id. The policeman who testified said that at no point did Luck
say he was afraid of the victim. Id. The court held that, while the evidence raised self-defense, no evidence
raised sudden passion from adequate cause. Id. at 375. Mere fear is not sudden passion; the mind must
be rendered incapable of cool reflection. Gonzales v. State, 717 S.W.2d 355, 357 (Tex. Crim. App.
1986) (no sudden passion from adequate cause when defendant killed victim after victim had confrontation
with defendant's friend and walked up behind defendant and fired shot) In Daniels v. State, the court held
that a defendant who feared the victim and realized that he had to kill the victim or be killed was not entitled
to a sudden passion instruction. 645 S.W.2d 459, 460 (Tex. Crim. App. 1983). Daniels killed the victim
after the victim threatened to kill Daniels and reached for what Daniels thought was a gun. Id. The court
concluded that Daniels's fear was not terror that rendered him incapable of cool reflection. The court held
that because, "[m]anifestly, appellant's own appraisal of his situation reveals that he had reflected on it,
knew what he had to do and did it," he was not entitled to an instruction on sudden passion arising from
adequate cause. Id.

 Price testified to concern for his own safety and a quick but logical assessment of his
alternatives, but he did not testify that he could not think or lost all control. The court gave an instruction
on self-defense, but did not instruct on sudden passion arising from adequate cause. The court did not err. 
We overrule point five.

 Having overruled these points of error, we affirm the judgment of conviction and
punishment.


Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: February 27, 1997

Do Not Publish

1. These cases are instructive even though these courts were working under the former statutory
scheme that cast murder with sudden passion arising from adequate cause as a separate offense of
voluntary manslaughter. The definitions of sudden passion and adequate cause did not change when
under the revised penal code they became defensive issues at punishment instead of prosecution issues
at guilt/innocence.


s harmless because the jury would not have credited the self-defense theory. Id. at 561. The
victim in Fry was not displaying deadly force and was obviously leaving when shot twice in the back. Id. 
Although Price testified that Roby hit him, bit him, threw objects at him, and slashed at him with a pottery
shard (nearly severing his finger), the jury nevertheless declined to credit his self-defense theory. We
conclude that, because only a finding that Roby used deadly force first would have led to a different result,
the exclusion of evidence of the victim's past use of non-deadly force did not prejudice the jurors' decision-making process. We overrule points three and four.

 By point of error five, Price complains that the court erred by refusing to give the jury his
requested charge on sudden passion. Had the jury found that he acted under the influence of sudden
passion, the offense of attempted murder could have been reduced to a third degree felony. See Tex. Penal
Code Ann. §§ 15.01(d) & 19.02(d) (West 1994). To be entitled to his requested instruction, some
evidence must have shown that he attempted the murder under the immediate influence of sudden passion
arising from adequate cause. Tex. Penal Code Ann. § 19.02(d) (West 1994).

 The evidence did not show the requisite level of provocation or passion. Courts have
distinguished between self-defense and sudden passion from adequate cause. (1) To be adequate, the cause
must be that which would "commonly produce a degree of anger, rage, resentment, or terror in a person
of ordinary temper, sufficient to render the mind incapable of cool reflection." Tex. Penal Code Ann. §
19.02(a)(1) (West 1994). In Luck, the victim pulled out a knife, told the defendant he was going to kill
him, and stabbed him; after a scuffle, the victim took the defendant's gun away and hit him on the head with
the butt. Luck v. State, 588 S.W.2d 371, 374 (Tex. Crim. App. 1979). The defendant then took the
weapons and stabbed and shot the victim. Id. Th