# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00711-CR

**Bobby Dale Nelson, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT
## NO. A-04-0576-S, HONORABLE BARBARA WALTHER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Bobby Dale Nelson appeals a conviction for aggravated assault with a deadly weapon. Tex. Penal Code Ann. § 22.02(a)(2) (West Supp. 2006). A jury found Nelson guilty and found true the two paragraphs in the indictment alleging that Nelson had been convicted of two prior felonies, which allowed an enhanced range of punishment. *Id.* § 12.42(d). The jury assessed punishment at 99 years' imprisonment in the institutional division of the Texas Department of Criminal Justice. We will affirm.

## BACKGROUND

Nelson was arrested for assaulting his cousin, Vicky Lynn Daniels, on May 10, 2004. Daniels alleged that Nelson struck her repeatedly with his fists and at least once with an axe handle. Nelson admitted striking Daniels with his fists, but denied that he hit her with the axe handle.

During the course of the police investigation, Nelson requested a polygraph examination and the San Angelo Police Department agreed to examine him. At trial the polygraph

examiner, Detective James Johnson, testified as to what Nelson told him in a post-examination interview.

The trial was originally set for February 16, 2005. Nelson failed to appear at this trial setting. Nelson's bond was forfeited, and he was eventually brought to trial on July 18, 2005.

## DISCUSSION

Nelson raises two issues on appeal. First, Nelson argues that the State obtained his conviction through the knowing use of perjured testimony.[1] This argument is based on the testimony of Detective Johnson, the polygraph examiner. At trial, defense counsel cross-examined Detective Johnson:

> Q.   And the—is it fair to say that the purpose of your being involved in this case and your interview was to try to determine whether Mr. Nelson was telling the truth in—in his version of the—of the incident?
>
> A.   No, sir.
>
> Q.   That was not it?
>
> A.   No, sir, my job was to get his version. I don't think I was looking at truth or not. I was trying to see what his side of the story was.

It is well-settled that the State may not obtain a conviction through the knowing use of perjured testimony. *Losada v. State*, 721 S.W.2d 305, 311 (Tex. Crim. App. 1986). Because a prosecutor's knowing use of perjured testimony violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution, any resulting conviction must be reversed unless the

---

[1] We note here that the State did not present any of the allegedly perjured testimony. All the testimony complained of was developed on cross-examination. This fact alone is enough to dispose of Nelson's argument. *Luck v. State*, 588 S.W.2d 371, 373 (Tex. Crim. App. 1979). However, in the interests of justice we will address the issue as briefed.

reviewing court is convinced beyond a reasonable doubt that the perjury did not contribute to the conviction or punishment. Tex. R. App. P. 44.2(a); *Ex parte Castellano*, 863 S.W.2d 476, 485 (Tex. Crim. App. 1993).

Nelson argues that because Detective Johnson's only role in the case involved administering a polygraph examination, his testimony at trial that he was not trying to determine whether Nelson was being truthful constituted perjury. The State offers several arguments in response. First, the State argues that Detective Johnson's testimony was truthful. In the alternative, the State argues that if Detective Johnson's testimony was false, he did not have the intent to deceive, but rather to avoid improper testimony concerning the polygraph examination. Third, the State argues that even if Detective Johnson's testimony constituted perjury, Nelson has made no showing that the statement was material or that he was harmed.

The State's argument that Detective Johnson's testimony was truthful has some merit. Technically speaking, the purpose of Detective Johnson's interview was to determine whether Nelson gave off physical signs of deception while telling his version of the incident in question. Presumably the results of the polygraph examination would be reviewed, along with many other pieces of information gathered in the investigation, by someone other than Detective Johnson (perhaps the Assistant District Attorney assigned to the case) to determine whether Nelson was telling the truth. However, we need not even reach this issue because, as explained below, we hold that Nelson was not harmed by this portion of Detective Johnson's testimony.

The State's argument that if Detective Johnson's testimony was false, it was not made with the intent to deceive, is without merit. The desire to avoid improper testimony and the intent to deceive are not mutually exclusive. If Detective Johnson testified falsely because of a desire to

3

avoid improper testimony, he had the intent to deceive. *See* Tex. Penal Code Ann. § 6.03(a) (West 2003) (providing that a person acts with intent when he has a "conscious objective" to cause the result of his conduct). That his motive may have been to avoid the jury being tainted by hearing improper testimony does not change this fact.

It is clear that "the existence and results of a polygraph examination are inadmissible for all purposes." *Tennard v. State*, 802 S.W.2d 678, 683 (Tex. Crim. App. 1990). However, questions concerning the admissibility of evidence are to be decided by the court, not by the witnesses. Tex. R. Evid. 104(a). A witness's role in court proceedings is to answer questions truthfully, not to determine what is proper or improper testimony to censor himself accordingly. If Detective Johnson purposely testified falsely, he would not be excused by a desire to protect the jury from hearing inadmissible evidence. However, this issue is not dispositive because Nelson was not harmed by this portion of Detective Johnson's testimony.

A conviction based on perjured testimony must be reversed unless we find beyond a reasonable doubt that the perjury did not contribute to the conviction or punishment. Tex. R. App. P. 44.2(a); *Castellano*, 863 S.W.2d at 485. Here, Nelson suffered no harm as a result of this portion of Detective Johnson's testimony. Nelson argues in his brief only that Detective Johnson's testimony left "a false impression as to the function of his interview." But Nelson does not argue that this "false impression" contributed to his conviction or punishment, nor do we see any way it could have. If Detective Johnson had testified that his purpose was to determine whether Nelson was telling the truth, it is unclear how this would have had any effect on the jury's assessment of Detective Johnson's testimony about the statements Nelson made to him in the interview.

4

Nelson does argue that if Detective Johnson had testified that his purpose was to determine if Nelson was telling the truth, then testimony concerning the results of the polygraph examination might have been admitted by the trial court. Nelson cites *Duckett v. State*, 797 S.W.2d 906 (Tex. Crim. App. 1990), for the proposition that trial courts have discretion to admit testimony. However, as noted above, the court of criminal appeals has stated unequivocally in a case decided after *Duckett* that "the existence and results of a polygraph examination are inadmissible for all purposes." *Tennard*, 802 S.W.2d at 683. Moreover, there is no reason that Detective Johnson's testimony prevented defense counsel from inquiring about the polygraph examination, if he thought it might be admitted. However, defense counsel did not pose any questions to Detective Johnson concerning the existence or results of the polygraph examination.

Because we find beyond a reasonable doubt that the portion of Detective Johnson's testimony in question, even if perjured, did not contribute to Nelson's conviction or punishment, we overrule Nelson's first issue on appeal.

In Nelson's second issue, he argues that the trial court erred by admitting three pieces of evidence relating to his failure to appear at the February 16, 2005 trial setting, over his objection that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. The evidence admitted included Nelson's original bail bond, a Bailiff's Certificate indicating that Nelson did not answer or appear after the bailiff called his name three times at the courthouse door on the morning of the trial setting, and the Judgment Nisi forfeiting Nelson's bond. Nelson argues that this evidence has no probative value on the issue of his guilt for aggravated assault because the State did not offer any reason for his failure to appear for

trial.  He argues that the danger of unfair prejudice is substantial, and thus the trial court should have excluded the evidence.

We review evidentiary rulings by the trial court using an abuse of discretion standard. *Richardson v. State*, 879 S.W.2d 874, 881 (Tex. Crim. App. 1993).  A trial court abuses its discretion with respect to an evidentiary ruling when its decision is outside the zone of reasonable disagreement. *Id.*

The court of criminal appeals has held that Rule 403 objections should be analyzed using a balancing test that includes the following factors:

> (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor that is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;
>
> (2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way;"
>
> (3) the time the proponent will need to develop the evidence during which the jury will be distracted from consideration of the indicted offense;
>
> (4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*Wyatt v. State*, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000).  Nelson argues with respect to the first factor that his failure to appear is no evidence of his guilt.  However, as the State points out, the court of criminal appeals has repeatedly held that a criminal defendant's failure to appear and the forfeiture of the defendant's bond may be used to show flight.  *See, e.g.*, *Cantrell v. State*, 731 S.W.2d 84, 93 (Tex. Crim. App. 1987); *Aguilar v. State*, 444 S.W.2d 935, 938 (Tex. Crim. App. 1969).  And flight, in the context of bail-jumping, may be construed as evidence of guilt.  *Cantrell*, 731 S.W.2d at 93.

Evidence of a defendant's failure to appear at trial and of the forfeiture of his bond is not the type of evidence that is likely to produce an irrational emotional reaction from the jury. *Hyde v. State*, 846 S.W.2d 503, 505 (Tex. App.—Corpus Christi 1993, pet. ref'd). Also, the State used very little time developing this evidence. The State did not even call a witness to lay a foundation to introduce these documents, as Nelson stipulated to the documents' authenticity. Finally, the State did not have a great need for this evidence to prove guilt because it had ample other evidence. However, as explained above, Nelson's failure to appear and the forfeiture of his bond were some evidence of guilt, and no single factor in the test is dispositive.

Since at least three of the four factors in the Rule 403 balancing test pointed toward admission of the evidence, we hold that the trial court did not abuse its discretion in admitting evidence of Nelson's failure to appear at his original trial setting and forfeiture of his bond. We overrule Nelson's second point of error.

### CONCLUSION

Because we overrule all of Nelson's issues on appeal, we affirm the judgment of conviction entered by the trial court.

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Puryear and Waldrop

Affirmed

Filed:   September 8, 2006

Do Not Publish

7