Karl Andrew PUCKETT, Appellant,

v.

The STATE of Texas, Appellee.

No. 63434.

Court of Criminal Appeals of Texas, Panel No. 3.

Sept. 22, 1982.

Rehearing Denied Nov. 10, 1982.

OPINION

McCORMICK, Judge.

Appellant was convicted of murder, and punishment was assessed at confinement for fifteen years' and one day.

Since appellant challenges the sufficiency of the evidence, a brief rendition of the facts is required.

Mrs. Rose Puckett testified that two of her sons, appellant and the deceased, Robert Puckett, got into an argument over a dog that the deceased had brought home. The deceased wanted to keep the dog and appellant demanded that the dog could not stay. A fist fight broke out between appellant and the deceased in the living room of the Puckett residence. Mrs. Puckett testified that she broke up the fight and the deceased went out to the front yard of the home. Appellant went to his bedroom. She further testified that twenty minutes later appellant came out of his bedroom carrying a butcher knife and a pocket knife. The deceased, seeing appellant through the front door, told appellant "to come out into the yard and fight like a man." Appellant responded that he did not want to fight in the yard. More words were exchanged between the deceased and appellant through the front screen door. The deceased then came into the house, went to the living room and sat down on a chair. When the deceased entered the house, he was carrying a stick. When he sat down he leaned the stick up against the wall. Appellant entered the living room, dropped the butcher knife and advanced on his brother with the pocket knife. The deceased picked up his stick as appellant approached him. Thereafter, appellant jumped on and began stabbing the deceased. The deceased meanwhile was attempting to hit appellant with his stick. The fight was brief. After the fight, appellant went out into the backyard. The deceased attempted to go into his mother's bedroom. However, he collapsed in the doorway. The deceased died shortly thereafter from the stab wounds he received from appellant.

George Roland, McKinney, for appellant.

Tom O'Connell, Dist. Atty., and William L. Schultz, Asst. Dist. Atty., McKinney, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, DALLY and McCORMICK, JJ.

David Puckett, another brother of appellant, testified that he broke up the initial fist fight between the deceased and appellant. Appellant went to his bedroom and the deceased went into the front yard and got a large stick. Appellant went into the hallway where he could see the deceased through the front screen door. David Puckett then testified he heard the deceased calling to appellant "to come out and fight like a man." The appellant then walked into the kitchen and the deceased came into the house and sat down in a chair in the living room leaning his stick against the wall near him. David then testified that appellant returned to the living room carrying a butcher knife. He testified that the deceased rose from his chair with his stick in his hands and swung the stick, hitting appellant. Thereafter, appellant and the deceased "fell" into the chair where appellant stabbed the deceased five times.

Additionally, David testified that the deceased had gotten the stick two days earlier. He had previously tried to buy an eighteen inch billy club with nails sticking out one end. The deceased told David he wanted a weapon so he could get back at the appellant. Finally, David testified that during the fight appellant asked the deceased to stop fighting, and the deceased replied, "Hell no."

Mrs. Lane McDonald testified that she went to the Puckett residence to get a couple of the boys to do her lawn work. When she arrived the deceased was laying on a bed in the master bedroom. Mrs. McDonald tried to help the deceased and then left to get an ambulance and the police. Mrs. McDonald further testified she observed five wounds in the deceased's body, two in front and three in the back, and blood everywhere.

Randy Nabors, a Farmersville police officer, was dispatched to the Puckett home after Mrs. McDonald's report was received. On arrival at the residence, Officer Nabors could not detect any signs of life from the deceased. He located and arrested appellant who surrendered without resistance. Appellant's pocket knife was retrieved from a dresser drawer by appellant's mother and turned over to Nabors at that time. Blood stains were on the knife. Appellant's mother told the officer that appellant had stabbed the deceased. Appellant did not exhibit any wounds or injuries on his person when he was arrested except for a bite wound on his arm, allegedly from the deceased. The living room appeared to be in disorder. The deceased's stick was admitted into evidence. Nabors testified that a large stick could be a deadly weapon as could appellant's pocket knife.

Linda Norton was called as a witness by the State and testified she was a forensic pathologist. She performed the autopsy on the deceased. She testified that of the five wounds on the deceased's body only one was the fatal wound and one other was potentially fatal. From the type of wounds on the body she stated that the cause of death was stabbing by a sharp, single edged instrument. From the location and type of wounds, she stated that the wounds to the deceased were the result of a struggle and made in an assaultive knife pattern. Norton further stated that the wounds to deceased's hand and wrists were "defensive wounds" incurred while attempting to ward off appellant's assault.

The appellant testified as a witness in his own behalf and stated that after the initial fight in the living room he went to his bedroom. When he heard the deceased yelling, he walked to the front door. The deceased was standing in the front yard, holding a stick, and yelling at him "to come outside and fight like a man." Appellant testified he told the deceased to come inside so that the neighbors would not see. Appellant then walked into the bedroom and got his pocket knife; he also went into the kitchen and got a butcher knife. Appellant testified that when he returned to the living room the deceased stood up and grabbed him. The deceased then reached for his stick; appellant threw down the butcher knife, keeping the pocket knife in his right hand. Appellant testified he told the deceased that if he would put down the stick appellant would drop the pocket knife,

but the deceased refused. The deceased then swung the stick at appellant, hitting appellant on the left side. Appellant tried unsuccessfully to grab the stick. Then the deceased tried to grab the knife and his hand was cut. The deceased continued swinging the stick at appellant and appellant began stabbing the deceased. The two fell into a chair. When appellant finally grabbed the stick, he stopped fighting and went outside. Appellant testified that at no time did he intend to kill the deceased.

Appellant argues that the evidence shows he was acting in self-defense and thus is insufficient to sustain his conviction for murder. The jury was charged on the law of self-defense. We find the evidence sufficient to support the conviction. The issue of self-defense, which was an issue of fact, was resolved by the jury against appellant and the evidence, although very close, supports that determination. *Silva v. State,* 546 S.W.2d 618 (Tex.Cr.App.1977); *Sloan v. State,* 515 S.W.2d 913 (Tex.Cr.App.1974).

In his first ground of error appellant urges that the State was improperly permitted to impeach its own witness, the mother of appellant, by introducing her prior written statement. During trial, Mrs. Puckett testified that the deceased had used a stick to beat appellant during the stabbing. This fact was omitted from her written statement given to police on the day of the incident. The prosecution claimed surprise in that she testified at trial that the deceased had a stick in his hands and beat the appellant while her pre-trial sworn statement omitted this fact. No other showing of surprise or injury was made by the State.

A party may not impeach its own witness unless the witness testifies to facts injurious to that party's case and the party demonstrates that he was surprised by such testimony. Article 38.28, V.A.C.C.P.; *Houston v. State,* 626 S.W.2d 43 (Tex.Cr. App.1981); *Dove v. State,* 623 S.W.2d 346 (Tex.Cr.App.1981); *Cole v. State,* 611 S.W.2d 79 (Tex.Cr.App.1981); *Lewis v. State,* 593 S.W.2d 704 (Tex.Cr.App.1980).

To demonstrate surprise for purposes of impeaching one's own witness the party *must* show prior conversations with or statements by the witness outside the presence of the jury. *Houston v. State,* supra; *Dove v. State,* supra. It is not a sufficient predicate for impeaching one's own witness that the witness merely failed to testify as expected or to remember facts favorable to the party calling the witness. *Houston v. State,* supra; *Williams v. State,* 521 S.W.2d 250 (Tex.Cr.App.1975); *Banks v. State,* 510 S.W.2d 592 (Tex.Cr.App.1974). Nor is it sufficient to merely claim surprise. *Dove v. State,* supra; *Williams v. State,* supra; *Banks v. State,* supra. In addition, the testimony of the witness, in order to warrant impeachment, *must* be injurious to the calling party's case. Mrs. Puckett admitted everything in her statement was true and the only difference between her statement and trial testimony was that the deceased had a stick in his hands at the time he was attacked by appellant. No injury or surprise was thus shown to a degree sufficient to permit impeachment. Where the State is erroneously permitted to impeach its own witness, reversible error is committed. *Dove v. State,* supra. We cannot say in view of the conflicting testimony that this error was harmless beyond a reasonable doubt. *Dove v. State,* supra.

In his second ground of error, appellant complains of the State being permitted to impeach its own witness, David Puckett. We note at the outset that the trial court, in regard to this witness' testimony and that of Mrs. Puckett, permitted the State to introduce into evidence over defense counsel's objection the sworn statements of Mrs. Puckett and David Puckett before the State determined if any inconsistencies existed between the statements and the trial testimony. A proper predicate for impeachment was therefore not laid. In addition, we note that the State only pled surprise but never offered any proof of surprise. The State admits that the introduction of the witness' statement was error though it contends it was harmless. For the same reasons we sustained appellant's first ground

of error, we sustain appellant's second ground of error.

In view of the bare sufficiency of the record before us, we cannot say that the improper impeachment of Mrs. Puckett and David Puckett was harmless error beyond a reasonable doubt and, accordingly, we reverse the judgment of conviction and remand this case for a new trial.

DALLY, J., concurs in the result.