**Ronald MOORE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 68090.

Court of Criminal Appeals of Texas,
En Banc.

July 17, 1985.

Frank R. Hughes, Liberty, and Brian W. Wice, on appeal only, Houston, for appellant.

Carroll E. Wilborn, Jr., Dist. Atty., Kevin H. Settle, Asst. Dist. Atty., Liberty, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

This is an appeal from a conviction for murder. See V.T.C.A. Penal Code, Sec. 19.02(a)(1). Appellant has filed three briefs alleging four grounds of error. He challenges the sufficiency of the proof of venue, sufficiency of the evidence generally, the court's charge on voluntary manslaughter, and the effectiveness of counsel at trial and initially on appeal. Having found no merit in any of appellant's claims, we affirm.

The record reflects that appellant and three eyewitnesses testified to the actual shooting. Appellant, the deceased and the three eyewitnesses had all been drinking beer all evening, and apparently the deceased and his sister (an eyewitness) had been drinking most of the day. On March 6, 1979 the appellant met the deceased at a local cafe known as Pepper's. Appellant had known the deceased most of his life and had never had any prior problems with him. Appellant testified that early in the evening of March 6, 1979 the deceased asked to borrow a dollar from appellant. Appellant and the deceased went out back behind the cafe/bar to discuss the loan. Appellant testified he explained to the deceased that he would loan him a dollar but all he had were twenty dollar bills; as appellant was returning his bills to his pocket, the deceased grabbed a twenty. For the next two hours appellant and the deceased intermittently "went out back" of the bar to discuss the pilfering of appellant's money. While words were exchanged they do not appear to have been heated words, nor was there any physical altercation.

After a third confrontation, appellant left the bar and went to his home and got a shotgun. After deceased reneged on his promise to return appellant's money, appellant got in his car and drove out to a highway to lay in wait for deceased. Deceased had obtained transportation home from one Walter Jones, along with the deceased's sister and one Mary Baldwin. It is undisputed that appellant flashed his lights at Walter Jones' vehicle, causing him to pull over to the side of the road. Walter Jones exited from his vehicle and met appellant in front of Jones' truck. Appellant explained that he wanted his money. Jones checked with the deceased who denied that he owed appellant any money. All three passengers testified that the deceased denied the pilfering of appellant's money. Jones offered to pay appellant ten dollars that evening and the rest the following day after work. Appellant refused the offer. Jones returned to his vehicle at which time appellant was on the passenger side of the truck pointing his shotgun at deceased. Jones yelled at appellant not to shoot in his truck. Appellant claims he saw the deceased make a downward movement as if to get a weapon. All three passengers testified that the deceased made no movement. Appellant shot deceased in the face at point blank range. The deceased died shortly thereafter.

There was no testimony that any words were exchanged between appellant and the deceased at the time of the shooting. Appellant testified that he knew the deceased had recently been paroled from prison, that the deceased had been to prison twice, that the deceased was known to carry a weapon and was generally a bully. Appellant testified that he was in fear when he shot deceased. Other testimony generally supported appellant's characterization of the deceased.

In his first ground of error appellant challenges the sufficiency of the evidence to support proof of venue. Venue need only be proven by a preponderance of the evidence. *Black v. State,* 645 S.W.2d 789 (Tex.Cr.App.1983). Two of three eyewitnesses testified that the offense occurred in Liberty County. We find the testimony of two eyewitnesses to be more than sufficient. This ground of error is overruled.

In his second ground of error appellant challenges the sufficiency of the evidence to support his conviction. As shown ante, appellant admitted shooting the deceased. He claimed self-defense. The jury was properly charged on self-defense. When this Court reviews the sufficiency of the evidence, we do so by viewing the evidence in the light most favorable to the jury's verdict. The appellant admitted killing the deceased, ergo the only issue for the jury to decide was self-defense.

The three eyewitnesses testified that the deceased did nothing to precipitate the shooting. The issue of self-defense was a fact issue and was decided against appellant. See *Farris v. State,* 640 S.W.2d 284 (Tex.Cr.App.1982) (rev'd. on other grounds), wherein we found the evidence to be sufficient. Ground of error number two is overruled.

By way of two supplemental briefs filed by different counsel, retained subsequent to the filing of the initial brief, appellant challenges the effectiveness of counsel at trial and on appeal and challenges the court's charge on voluntary manslaughter. We will address the jury charge issue first.

Appellant argues that the trial court committed fundamental error in failing to charge [1] on the negation of sudden passion within the charge on murder. Appellant relies upon *Cobarrubio v. State,* 675 S.W.2d 749 (Tex.Cr.App.1984).

In *Cobarrubio,* supra, this Court found that *if voluntary manslaughter was raised by the evidence* [emphasis added], then the trial court must instruct the jury,

in the charge on murder, that in order to convict the defendant of murder, the jury must find beyond a reasonable doubt, the absence of sudden passion.

This Court in *Almanza v. State,* 686 S.W.2d 157 (Tex.Cr.App.1985), substantially altered the law governing jury charge error. No longer will certain errors require automatic reversal. Instead, each case must be reviewed individually to determine whether the error alleged was so egregiously harmful that appellant has been deprived of a fair and impartial trial. In making this determination we review "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the arguments of counsel and any other relevant information revealed by the record of the trial as a whole". *Almanza,* supra at 171; *Bonfanti v. State,* 686 S.W.2d 149 (Tex.Cr. App.1985).

Appellant's testimony and the evidence at trial, at most, raised the issue of self-defense. Testimony raising the issue of self-defense does not necessarily raise the issue of voluntary manslaughter. *Luck v. State,* 588 S.W.2d 371 (Tex.Cr.App. 1979). Appellant testified that he was in fear of the deceased. However, fear alone does not raise voluntary manslaughter, as it does not necessarily demonstrate "sudden passion arising from an adequate cause." *Daniels v. State,* 645 S.W.2d 459 (Tex.Cr.App.1983). Prior provocation or anger is not alone sufficient to raise the issue of voluntary manslaughter. *Hobson v. State,* 644 S.W.2d 473 (Tex.Cr.App.1983).

The query that is presented in the case sub judice, then, is whether the trial court "fundamentally erred" in giving a charge on voluntary manslaughter, infirm under *Cobarrubio,* supra, considering there was no evidence to support such a charge. We answer this query by looking at: (1) the evidence, (2) argument of counsel and (3) the jury charge.

The theory presented by appellant, testifying in his own behalf, was one of self

---

1. No objection was lodged to this portion of the court's charge.

defense and defense of his tangible personal property. This theory is borne out in the following testimony on direct examination by appellant:

"Q. Now, I'd like to direct your attention once again, Ronnie, to the moment that you pulled the trigger, the moment that you shot Davis. Did you feel at that time even though you had a weapon in your hand—Did you feel at that time that Davis could reach and get his weapon and shoot you?

"A. Yes, I did. I felt it was possible because I mean, the guy's truck that he was in I know—He's known to carry a pistol and I know Buddy was known to carry a pistol so I didn't know what to expect." S/F pg. 179

When we look at the argument of counsel to the jury, there is absolutely *no* mention of voluntary manslaughter. Appellant's counsel argued that the deceased was a dangerous man, who had been to the penitentiary, was known to carry a pistol and who was feared by appellant. He argued that "the law gives Ronald Moore the right to recover his property." Appellant's theory is further supported in the court's charge wherein the jury was instructed in accordance with V.T.C.A. Penal Code, Secs. 9.31, 9.32, 9.41 and 9.42.

■ In view of the "entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the arguments of counsel ... and the record of the trial as a whole," the error was not "so egregious" and did not create such harm so as to deny appellant a "fair and impartial trial." See *Almanza*, supra. The ground of error is overruled.

In his final ground of error appellant claims he was denied the effective assistance of counsel. Appellant was represented by attorney Frank Hughes throughout trial and on appeal through his first brief. Dissatisfied with the representation he was receiving, appellant retained attorney Brian Wice to represent him for the appeal. Mr. Wice filed both supplemental briefs herein.

Appellant claims his original counsel was ineffective in failing to file any pre-trial motions; in failing to voice proper objections to two jurors during voir dire; in failing to obtain jury instructions on lesser included offenses; in failing to call witnesses; in failing to call additional witnesses at the punishment hearing; in failing to file a motion for new trial; and in failing to file an adequate appellate brief.

■ Right to counsel has been interpreted to mean the right to reasonably effective assistance of counsel. *Ex Parte Duffy*, 607 S.W.2d 507 (Tex.Cr.App.1980). This does not guarantee the accused errorless representation, but instead affords him an attorney "reasonably likely to render and rendering" reasonably effective assistance of counsel. *MacKenna v. Ellis*, 280 F.2d 592 (5th Cir.1960), *cert. den.* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961); *Ex Parte Gallegos*, 511 S.W.2d 510 (Tex.Cr. App.1974). The burden of proving ineffective counsel falls on the appellant. *United States v. Killian*, 639 F.2d 206 (5th Cir. 1981), *cert. den.*, 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394; *Marino v. United States*, 600 F.2d 462 (5th Cir.1979). Such a contention must be proven by a preponderance of the evidence. *Marino*, supra.

■ In determining whether there was ineffective assistance of counsel, the trial as a whole must be looked at—not isolated incidents of counsel's performance. *Ewing v. State*, 549 S.W.2d 392 (Tex.Cr.App.1977).

■ As previously shown, appellant admitted shooting the deceased at point blank range in a dispute over money. There were three eyewitnesses to the offense, all of whom testified that the deceased made no threatening gestures or statements. While we cannot say that trial counsel's handling of this case was ideal or even without some error, we do not believe that, "absent the errors, the fact finder would have had a reasonable doubt respecting guilt." See *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Having found no reversible error, the judgment of the trial court is affirmed.

CLINTON, Judge, concurring.

I am in general agreement with the majority's determination that whether or not *Cobarrubio* error is fundamental must be assayed in light of *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985). We must look to see whether we agree with the trial court's assessment that sudden passion was raised by the evidence.[1] If so, then the failure of the court to charge in accordance with *Cobarrubio* would "precipitate[ ] a denial of due process of law in the most fundamental sense," 675 S.W.2d at 752, and perforce, constitute "egregarious harm" under *Almanza*, supra.

In this context I wish to amplify on the majority's observation that "[a]ppellant testified that he was in fear of the deceased." (at p. 530.)

The fear about which appellant testified did not arise at the moment of the killing. Rather, appellant testified that throughout the evening he had been afraid for his life.

On direct, appellant testified as to one of his encounters with the deceased, after the deceased had seized his money, thus:

"... I called him outside. I said, Buddy, I say, I need my money. I got to pay my bills. I need my money, you know, why you want to do me like this and at that time he threatened to kill me if I kept on harrassing [sic] him about my money so— [2]

Q: Ronnie, at that point why didn't you reach across and strum his head or something and take your money back?

A: Well, if a man tells you he is going to kill you and he's known to pack a weapon, you know, I feared for my life."

Appellant insisted that throughout the evening leading up to the killing he was angry and afraid, presumably while fetching his "rabbit gun" from his home and ultimately confronting the deceased. When he came to address the incident itself appellant testified:

"Q: I want you to tell us at the time you saw the movement did you believe that he was going to take a weapon from some concealed place?

A: Yes, I did.

Q: So in that split second that you had to react you shot him?

A: Yes, I did.

Q: At that point were you afraid for your own life?

A: I was *still* afraid." [Emphasis supplied.]

There is no indication that the incremental provocation, if such it was, of the deceased's reaching for a weapon caused appellant any new or sudden consternation. Rather, he testified that he was "still afraid." The record is clear that appellant acted determinedly, and maintained his composure throughout. Thus, even at the moment at which he pulled the trigger appellant seemed capable of cool reflection. In short, I do not see that any "sudden passion" arose in this case. See *Daniels v. State*, 645 S.W.2d 459 (Tex.Cr.App.1983).

With these further observations I join the Court's opinion.

TEAGUE, Judge, dissenting.

It is now axiomatic that whenever possible, this Court should cite authority to sup-

---

1. Whenever the trial court determines that the evidence raises an issue as to sudden passion it is incumbent that it give a proper charge to the jury. This is true regardless of whether an appellate or discretionary review court subsequently finds fault in that determination. Accordingly, our inquiry here is not whether the trial court erred; it did. Rather, it now must be assayed whether on the record as a whole the error committed was such as to deprive the accused of a fair and impartial trial. *Almanza,* supra. It is in this context that it is relevant to consider, as a matter of appellate review, whether the evidence was sufficient to require that the authorization paragraph on murder place on the State its burden of proving the lack of sudden passion.

2. Incredibly, the majority fails to find this to constitute "heated words."

port a holding it makes in a particular case; especially is this true when this Court is handing down a decision of first impression. In this instance, however, the majority does not cite a single decision of this Court, any other court, or any secondary source, that will support its implicit holding that an appellate court may review the record of appeal in order to "second guess" a trial judge's decision to give the jury an unobjected to instruction on a lesser included or different offense or to give the jury an unobjected to defensive instruction to the charged offense.

In overruling appellant's contention that the charge to the jury was erroneous, because it failed to instruct the jury that before it could find the appellant guilty of murder it had to first find that the State negated sudden passion, the majority opinion implicitly starts with a false premise, namely, that because *it* has reviewed the facts, and concluded that there was no evidence to support the trial judge's decision to give an instruction on the law of voluntary manslaughter, the trial judge should not have given an instruction on voluntary manslaughter in the first place. The majority's faulty reasoning continues by quoting from this Court's unfortunate majority opinion of *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985), namely, "In view of the 'entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the arguments of counsel ... and the record of the trial as a whole,' the error was not 'so egregious' and did not create such harm so as to deny appellant a 'fair and impartial trial,' " in order to overrule appellant's ground of error.

Notwithstanding the fact that I am firmly convinced that I will live to see the day when a majority of this Court will expressly overrule *Almanza v. State*, supra, also see the concurring opinion I filed in *Kucha v. State*, 686 S.W.2d 154 (Tex.Cr.App.1985), and the dissenting opinion I filed in *Bonfanti v. State*, 686 S.W.2d 149 (Tex.Cr.App. 1985), I am compelled to dissent to the majority opinion in this cause because the disposition of the issue that is before us is controlled by *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and not *Almanza v. State*, supra. The majority opinion neither cites nor discusses *Mullaney v. Wilbur*, supra. The majority opinion, instead, relies heavily upon *Almanza v. State*, supra, as its authority to overrule appellant's ground of error. *Almanza v. State*, supra, is not even in point.

In *Mullaney v. Wilbur*, supra, the Supreme Court of the United States held that "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion of sudden provocation when the issue is properly presented in a homicide case." Also see *Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977); *Sandstrom v. Montana*, 422 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Thus, failure to require the State to satisfy this burden of proof is error of constitutional dimension. See *Mullaney v. Wilbur*, supra, and its progeny, which, not *Almanza v. State*, supra, control the disposition that this Court should make of appellant's ground of error. In light of the issue that is before this Court, and what the Supreme Court stated and held in *Mullaney v. Wilbur*, supra, also see its progeny as found in *Shepard's Citator*, I strongly suggest to the majority that it go and re-read *Mullaney v. Wilbur*, supra, and its progeny, which it neither cites nor discusses in its opinion.

A clear reading of *Almanza v. State*, supra, should make it evident to anyone that what this Court was deciding in that case was what meaning should be given to Art. 36.19, V.A.C.C.P., which statute merely states the *Texas* standard of appellate review, as established by the Legislature of this State, for error in the jury charge. And that's all *Almanza v. State*, supra, stands for; nothing more and nothing less. Thus, in this instance, to use *Almanza v. State*, supra, be authority for disposing of appellant's contention that the trial court's charge to the jury contained reversible error is much like trying to make a square peg fit a round hole.

The record in this cause is clear that the trial judge, after having personally ob-

served and heard the witnesses, concluded therefrom that the appellant was entitled to an instruction on the law of voluntary manslaughter, and he so instructed the jury on that offense as well as the offense of murder. However, in instructing the jury on the offense of murder, the trial judge committed Federal constitutional error by failing to instruct the jury that before it could find the appellant guilty of murder it had to first find, beyond a reasonable doubt, that the State negated sudden passion. See *Mullaney v. Wilbur,* supra,[1] and *Cobarrubio v. State,* 675 S.W.2d 749 (Tex.Cr.App.1984).

There is no question but that under *Mullaney v. Wilbur,* supra, also see *Cobarrubio v. State,* supra, the error in the jury charge in this cause is error of constitutional dimension because the error in the charge violates the Due Process Clause of the Federal Constitution.

Because the majority has erroneously considered and disposed of appellant's contention that the charge to the jury contains constitutional error, I must respectfully dissent.

---

1. In *Mullaney v. Wilbur,* supra, Justice Rehnquist pointed out in the concurring opinion that he filed in that cause that the defendant "made no objection to the trial court's instruction respecting the burden of proof on the issue of whether he had acted in the heat of passion on sudden provocation." 421 U.S., at 703, 95 S.Ct., at 1892). Notwithstanding there was no objection, the majority of the Supreme Court did not even mention or consider this fact in *Mullaney v. Wilbur,* supra.