CR5-242.RODRIGUEZ 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00242-CR







Julio Guerra Rodriguez, Appellant




v.




The State of Texas, Appellee








FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT


NO. 94-844-K368, HONORABLE BURT CARNES, JUDGE PRESIDING








 A jury found Julio Guerra Rodriguez, appellant, guilty of two counts of aggravated
kidnapping and one count of aggravated assault with a deadly weapon. (1) The jury assessed
punishment at ninety-nine years in prison for each count of aggravated kidnapping and ten years
in prison for aggravated assault. By a sole point of error, appellant contends that he was denied
effective assistance of counsel when defense counsel "opened the door" to otherwise inadmissible
evidence. We will affirm the trial court's judgment of conviction.

 To put appellant's point of error in context, and because appellant does not
challenge the sufficiency of the evidence supporting his conviction, we briefly review the facts. 
On April 24, 1994, Meredith Davis, a senior at Southwestern University, was jogging on campus
at about 8:30 in the evening. A Hispanic male, whom Davis later identified as similar to
appellant, approached her, grabbed her shoulder, and threw her to the ground. The man held her
with his arms around her throat and began pulling her toward a car in the parking lot. When
Davis screamed, the man put his hand over her mouth and told her to "shut up or die." She
escaped, fled to her dormitory, and immediately notified campus police. John Streitman, also a
senior, heard Davis' screams and observed a man nearby running to a car later determined to
belong to appellant. 

 Victor Mahagan, a Southwestern University police officer, later recovered a digital
pager from the crime scene. James Manes, a branch manager for the pager company, identified
appellant as the individual who rented the pager from his company.

 Shortly after Davis' attack, Kathy Trautman was attacked a few blocks away from
the scene of Davis' attack. Trautman identified appellant as the individual who followed her,
grabbed her, and cut her face and neck with a knife. At trial, Trautman also identified the
clothes, a key chain, and a knife as similar to those used by appellant when she was attacked.

 Later the same day of the two attacks, Laura House saw an individual crawling on
the ground at the scene of Davis' attack as if looking for a lost item. She later identified appellant
as similar to the individual she saw at the scene of the crime.

 Following a motion by defense counsel, the trial court suppressed certain of
appellant's statements made during a custodial interrogation. The suppressed statements included
appellant's confession to committing both aggravated kidnappings and the aggravated assault. The
trial court ruled the statements inadmissible because no one informed appellant that he had a right
to terminate the interview at any time. At trial, an investigating police officer, Steve Benton,
testified for the State. The following exchange occurred during defense counsel's cross-examination of Benton:



Defense Counsel: I want to talk about the clothes that were recovered from 1205
Ash [the apartment to which appellant gave his consent to search] and also the
vehicle. I want to make it clear that you're not prepared to say that Julio
Rodriguez was the one that was wearing those clothes on the 21st, are you?


Benton: I can't swear to that other than what he told me. 


Defense Counsel: Also, with respect to fingerprint evidence, there was a knife
that was recovered from 1205 Ash, was there not?


Benton: Yes, sir.


Defense Counsel: And as far as you know, -- well, actually you were the one who
seized it?


Benton: Yes, Sir, I was.


Defense Counsel: You did not submit that knife for fingerprints did you?


Benton: No, Sir, I didn't.


Defense Counsel: Was it preserved for fingerprints?


Benton: Basically, yes.


Defense Counsel: But it was not submitted? It was never tested?


Benton: No.


Defense Counsel: That would have been very reliable evidence, would it not?


Benton: Yes.


Defense Counsel: But that wasn't done, was it?


Benton: No, sir.



Afterward, the State argued that defense counsel had opened the door to further inquiry about
appellant's suppressed statements. Particularly, the State contended that the door was opened
regarding appellant's statements to Benton about the seized clothes and knife. The trial court
ruled that the State could question Benton about appellant's statements regarding these items. 
Portions of appellant's statements came in as rebuttal evidence regarding the police work related
to the clothes and the knife. Appellant contends that because defense counsel opened the door to
statements by appellant, he received ineffective assistance of counsel, his conviction should be
reversed, and the cause should be remanded for further proceedings.

 When we review an ineffective assistance of counsel claim, we apply the standard
described in Strickland v. Washington, 466 U.S. 668 (1994), and adopted in Hernandez v. State,
726 S.W.2d 53, 55 (Tex. Crim. App. 1986). According to this standard, appellant must
demonstrate (1) that counsel made errors so serious that appellant was functionally deprived of
the "counsel" guaranteed by the Sixth Amendment; and (2) that but for counsel's alleged
unprofessional errors, the result of the proceeding would have been different. Strickland, 466
U.S. at 687.

 Appellant bears the burden of proving, by a preponderance of the evidence,
ineffective assistance of counsel. Moore v. State, 694 S.W.2d 528, 531 (Tex. Crim. App. 1985). 
A reviewing court allows great deference to trial strategy when addressing an ineffective
assistance of counsel claim. Strickland, 466 U.S. at 687. Appellant must overcome a strong
presumption that counsel's conduct was effective. Id. When reviewing an ineffectiveness claim,
we must evaluate the reasonableness of counsel's challenged conduct on the facts of the particular
case viewed at the time of the challenged conduct. Id. We assess the adequacy of counsel's
assistance by the totality of the representation rather than looking at counsel's isolated acts or
omissions. Id.

 Appellant argues that defense counsel's questioning of Officer Benton cannot be
considered sound trial strategy. Appellant argues that defense counsel did not understand or
recognize the fact that his questioning opened the door to his inculpatory statements because he
continued to argue that the statements were inadmissible because they had been suppressed
previously. Appellant contends that defense counsel committed the biggest possible mistake one
representing a person accused of a crime could commit by opening the door for the State to bring
into evidence previously suppressed confession testimony by the accused. Appellant asserts that,
when evaluating defense counsel's performance based upon the two-pronged Strickland standard,
but for defense counsel's conduct regarding his cross-examination of Benton, the jury would not
have heard any admission of guilt by appellant. Thus, contends appellant, the jury probably
would have rendered a different verdict and confidence in the jury's verdict has been undermined.

 The first prong of Strickland requires appellant to show that his representation fell
below an objective standard of reasonableness. While appellant focuses on the single act of
defense counsel's opening the door to statements by appellant, we must review the totality of the
representation afforded appellant at trial. Carr v. State, 694 S.W.2d 123, 126 (Tex.
App.--Houston [14th Dist.] 1985, pet. ref'd). When doing so, we conclude that the trial was
professionally managed by defense counsel. The witnesses were adequately cross-examined and
defense counsel concentrated on the perceived failure of the State to prove specific portions of its
case in an effort to raise reasonable doubt in the minds of the jurors about appellant's guilt. 
Though defense counsel may have made a mistake when embarking on the particular line of
questioning with Benton, we hold that such mistake, if any, did not reduce the overall quality of
the representation below an objective standard of reasonableness. We cannot help but note that
defense counsel was faced with overwhelming direct evidence connecting appellant to the crime. 
Although his cross-examination of Benton was risky, defense counsel might very well have
considered that it was the only possible way to obtain an acquittal. When viewed in its entirety,
with the proper degree of deference necessary to eliminate the distorting effects of hindsight,
counsel's representation of appellant was reasonably effective. Strickland, 466 U.S. at 689.

 Even if defense counsel's representation fell below the standard, there is no
showing that it prejudiced the defense such that appellant's representation was fundamentally
unfair or unreliable. Defense counsel pursued several pretrial motions, had five potential jurors
struck for cause, challenged witnesses' testimony, and consistently sought to raise a reasonable
doubt. Additionally, circumstantial evidence other than appellant's admission existed that
supported the jury's guilty verdict. Accordingly, appellant has failed to show a reasonable
probability that, but for counsel's errors, the result of this proceeding would have been different. 
Id.

 We overrule appellant's sole point of error and affirm the trial court's judgment
of conviction.



 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Aboussie and Kidd

Affirmed

Filed: July 17, 1996

Do Not Publish

1.   Act of May 23, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883
(aggravated kidnapping, Tex. Penal Code Ann. § 20.04, since amended), and Act of May
27, 1991, 72nd Leg., R.S., ch. 903, § 1, 1991 Tex. Gen. Laws 3238 (aggravated assault
with a deadly weapon, Tex. Penal Code Ann. 22.02, since amended).


ong
presumption that counsel's conduct was effective. Id. When reviewing an ineffectiveness claim,
we must evaluate the reasonableness of counsel's challenged conduct on the facts of the particular
case viewed at the time of the challenged conduct. Id. We assess the adequacy of counsel's
assistance by the totality of the representation rather than looking at counsel's isolated acts or
omissions. Id.