11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

                                                         

Danny Ray Garza

Appellant

Vs.                   No.
11-02-00318-CR B Appeal from Taylor County

State of Texas

Appellee

 

The jury
found that Danny Ray Garza, appellant, intentionally and knowingly entered
a  habitation owned by Virginia Flatow,
without her consent, and committed aggravated assault upon her by using and
exhibiting a deadly weapon, a handgun, and that he intentionally and knowingly
threatened Flatow with imminent bodily injury by the use of the handgun.  The jury assessed punishment at confinement
for 50 years and a fine of $10,000.  We
affirm.








Ruth
Jennings was an elderly blind lady; Virginia Flatow was her daughter.  Prior to Jennings=s death, appellant was her personal caretaker
as well as the caretaker of various properties that she owned in Abilene.   Flatow inherited the properties upon
Jennings=s death, and appellant continued to take care
of the properties for a time.  At the
time of this offense, Flatow lived in Houston, but she had come to Abilene to
check on her properties.  On the night
of the offense, appellant used a key and entered the apartment where Flatow was
staying while in Abilene.  Appellant had
been the caretaker of this property and had previously lived in the
property.  Appellant also had lived in
other properties owned by Jennings that were later owned by Flatow.  When he entered the apartment, appellant had
been drinking, was angry, and had a gun. 
There is a dispute in the testimony as to whether appellant pointed the
pistol at Flatow.  Flatow testified that
appellant pointed the pistol at her and told her to put down the phone; she was
attempting to notify the police.  There
is also a dispute as to whether appellant threatened Flatow.  Flatow testified that, even though appellant
might not have verbally threatened her, she was threatened by his actions.  At some point in time, appellant and Flatow
left the apartment and walked outside. 
Flatow asked appellant for the handgun, and he gave it to her.  She locked it in the trunk of her car.  Appellant was subsequently arrested.

Appellant
presents four points of error.  He first
argues that the trial court erred when it allowed the State to introduce evidence
of an extraneous offense.  Appellant
filed a pretrial motion in which he sought to require the State to give notice
of any extraneous offenses which it intended to introduce at trial.  See TEX.R.EVID. 404(b); TEX. CODE
CRIM. PRO. ANN. art. 37.07, ' 3 (Vernon 1981 & Supp. 2003). 
In response to the motion, the State notified appellant of five offenses
which it intended to offer into evidence. 


The first
case involved a charge of arson that resulted in the destruction of one of the
properties owned by Flatow.  Appellant
admitted that he put a candle in one room of the house and turned on the gas in
another.  He later returned to the
property, and it was “completely gone.” 
The arson case was pending at the time of the trial of this cause.

The next
case about which the State notified appellant involved the death of
Jennings.  The notice alleged that
appellant knowingly and intentionally caused Jennings=s death in September 2000.  This allegation of murder had been
investigated by Harris County authorities, but no charges had been filed as of
the time of the trial in this case, October 2002.

The State
also notified appellant of its intent to offer a public intoxication offense
which occurred on the same date as the arson, as well as two other offenses
against Flatow=s property: burglary of a building and
criminal mischief. 








Appellant
did not testify at the guilt/innocence phase of the trial, but he did testify
during the punishment phase of the trial. 
Appellant admitted that he had a drinking problem and had been arrested
a “bunch” for public intoxication and that he had been arrested for driving
while intoxicated.  Appellant also
admitted to all of the offenses contained in the State=s notice except Jennings=s murder. 
During cross-examination of appellant, the State asked about the
circumstances surrounding Jennings=s death.  The record shows that,
at the time of her death, Jennings and appellant had taken a trip to Houston to
visit Flatow.  Although Jennings was
able to stand, her usual method for moving about, when she was alone, was by
crawling.  The State sought to show, by
appellant=s testimony, that, while appellant was taking
out the trash and smoking a cigarette, Jennings crawled down a hallway to a
stairway and fell down the stairs to her death.  Appellant first raised the objection that, because the State
could not prove the commission of the offense of murder, the evidence was not
admissible.  The State explained that it
was not attempting to prove a murder but rather a lesser included offense of
murder involving “negligent supervision...criminally negligent homicide.”  Appellant objected that, because the State
had not given notice of this lesser included offense, the evidence was not
admissible.  The State also argued that
the evidence would rebut appellant=s testimony of his good traits as Jennings=s caretaker. 
It is appellant=s
claim that the evidence does not rebut any of his testimony.  When he summed up his objections to the
trial court, appellant objected that the State had failed to give notice of
intent to introduce evidence regarding “negligent supervision.”  The trial court overruled that objection
because:  “It=s my understanding that the State=s not going to elicit this testimony in an
attempt to prove an extraneous offense, so I=ll overrule the objection.” 
Appellant responded:  “Secondly,
Your Honor, we would objectCI believe that first one=s [the objection stated by appellant] all there is, Your Honor.”








We are
limited in our consideration to the offer made, the objection made, and the
ruling actually made by the trial court. 
During his testimony, appellant testified that he started working for
Jennings after responding to an advertisement in the newspaper.  His first job was to cut and trim
grass.  He began to do other jobs for
Jennings on various properties which she owned.  Finally, appellant moved into one of the vacant properties owned
by Jennings and continued to take care of the properties and began to take care
of Jennings also.  Jennings had a
caretaker with her in the mornings, and appellant would telephone Jennings in
the afternoons because she “was alone for the rest of the day.”  Appellant further testified that, on one
occasion, Jennings was at home and accidentally locked herself out of the
bathroom and that she asked him to come and unlock  it.  When appellant went
to Jennings=s home and unlocked the door, Jennings fired
the caretaker and hired appellant as her caretaker.  Appellant testified that he made sure Jennings was fed “breakfast,
lunch, you know, snack, dinner.”  Later,
Jennings moved into the house where appellant was living.  According to appellant, he gave up his room
and moved to another so that Jennings would have larger quarters.  He continued to feed her and to care for her
as well as her properties.  At some
point in time, appellant refurbished and moved into another of the
properties.  At times, Jennings would
become scared and would call appellant at 2:00 or 3:00 in the morning; he would
leave his house, get Jennings, and bring her back to his house.  She would sleep on the couch while he slept
in a chair. Appellant let Jennings sleep on the couch because it was the best
place to sleep in his house. Appellant also testified that it was his
understanding that one of Jennings=s properties was to be his after Jennings=s death; however, he did not get the property.

 While the State could have offered evidence
of the circumstances of Jennings=s death for other reasons, it chose to offer the evidence in rebuttal
of appellant=s testimony about the quality of his
caretaking abilities.  That is the basis
upon which the trial court admitted the testimony.  Even though we believe that the notice of Jennings=s murder would include notice of all of the
circumstances surrounding the murder, as well as any purported lesser included
offenses, such notice was not necessary. 
The State is not required to give notice of intent to offer extraneous
offenses under Rule 404(b) or under TEX. CODE CRIM. PRO. ANN. art. 37.07
(Vernon1981 & Supp. 2003) when the evidence is offered in rebuttal and not
during the State=s case-in-chief.  Jaubert v. State, 74 S.W.3d 1
(Tex.Cr.App.2002).  We overrule
appellant=s first point of error.

In his
second point of error, appellant argues that the trial court erred when it
allowed the State  to make an improper
jury argument.  Flatow testified during
guilt/innocence that “[appellant] pointed the gun at me and said, ‘Drop the
phone,’ and I dropped it.”  Appellant
argues that, when she was giving her statement to the police officer who
investigated the offense, Flatow said that appellant pointed the pistol at her
but that he did not threaten her. 
Appellant argues that, during the State=s jury argument, the prosecutor pointed the gun at or in the direction
of each juror=s head and repeated the words: “[P]ut down
the phone.”  It is appellant=s position that such an argument was improper
because there was no testimony that appellant ever pointed the gun at Flatow=s head. 
However, appellant did not object to the argument and has waived his
complaint.  TEX.R.APP.P. 33.1(a);
Cockrell v. State, 933 S.W.2d 73 (Tex.Cr.App.1996), cert. den=d, 520 U.S. 1173 (1997).  We
overrule appellant=s
second point of error.

Appellant=s last two points of error concern his claim
that he received ineffective assistance of counsel.  Because appellant=s fourth point of error is related to the jury argument issue which we
have just discussed, we will address that point before we discuss appellant=s third point of error.  








In a
review of an ineffective assistance of counsel claim, we must first decide
whether appellant has shown that the representation fell below an objective
standard of reasonableness; and, if so, we must determine whether there is a
reasonable probability that the result would have been different but for
counsel=s errors. Strickland v. Washington,
466 U.S. 668 (1984);  Hernandez v.
State, 988 S.W.2d 770 (Tex.Cr.App.1999); Hernandez v. State, 726
S.W.2d 53, 55 (Tex.Cr.App.1986).  The
burden of proving ineffective assistance of counsel rests with appellant. Moore
v. State, 694 S.W.2d 528, 531 (Tex.Cr.App.1985).

Before we
will sustain an ineffective assistance of counsel claim related to a failure to
object, appellant must show that the trial court would have erred had it
overruled such an objection.  Vaughn
v. State, 931 S.W.2d 564, 566 (Tex.Cr.App.1996).   Because trial counsel is not required to object to matters which
are not objectionable, we will first determine whether the argument was
improper.  Proper jury argument falls
into four categories:  (1) a summation
of the evidence; (2) reasonable deductions from the evidence admitted for
consideration by the jury; (3) a rejoinder to argument by opposing counsel; and
(4) a plea for law enforcement.  Cantu
v. State, 842 S.W.2d 667, 690 (Tex.Cr.App.1992), cert. den=d, 509 U.S. 926 (1993).

As we have
stated, a contested issue in this case was whether appellant actually
threatened Flatow.  Flatow testified
that, when she told the investigating officer that appellant had not threatened
her, she was referring to verbal threats. 
However, she testified further that she felt threatened by appellant=s actions; he pointed the gun at her.  Flatow did not state to which part of her
body appellant pointed the gun.  We
believe that the argument was proper as a reasonable deduction from the
evidence admitted before the jury. 
Flatow=s testimony that appellant pointed the gun at
her supported the argument made by the State as equally as it would an argument
that appellant pointed the gun at any other part of the body.  Appellant has failed to meet his burden of
proving ineffective assistance of counsel. 
Because the argument was not objectionable, appellant=s trial counsel was not ineffective for
failing to object to it.  See Vaughn
v. State, supra.  Further, there is
a strong presumption that trial counsel=s actions were sound trial strategy. 
Strickland v. Washington, supra.  Appellant has not overcome that presumption.  Appellant=s fourth point of error is overruled. 








In his
third point of error, appellant complains that his trial counsel was
ineffective in that appellant was not allowed to testify during the
guilt/innocence phase of the trial. 
Appellant rightly points out that the final decision of whether to
testify belongs to a defendant.  Sapata
v. State, 574 S.W.2d 770 (Tex.Cr.App.1978).  However, the only proof in the record pertaining to appellant=s claim that he was not allowed to testify
were statements in a pro se motion for new trial and in another motion for new
trial which his appellate counsel filed. 
Those statements were mere assertions that appellant was not allowed to
testify during the guilt/innocence phase of the trial.  The record is silent as to whether appellant
had asked to testify, as to whether he and his trial counsel had discussed his
testifying, and, if so, as to what extent those discussions had taken
place.  Appellant has failed to meet his
burden under the first prong of Strickland that his trial counsel=s representation fell below an objective
standard of reasonableness. Strickland v. Washington, supra.  Even if appellant had met his burden under
the first prong of Strickland, he would fail on the second prong which
requires that there exist a reasonable probability that the result would have
been different but for counsel=s errors.  Strickland v.
Washington, supra.   Again,
whether appellant had threatened Flatow was an element of the offense and an
issue which appellant contested in his cross-examination of the State=s witnesses and in argument.  Further, appellant gave a statement that he
did not threaten Flatow.  In his brief,
appellant asserts that there is a reasonable probability that the outcome of
the case would have been different had he been allowed to testify and explain
his written statement and in rebuttal of 
Flatow=s testimony. 
However, during the guilt/innocence phase of the trial, appellant=s trial counsel was able to read to the jury
the claims which appellant made in his statement relative to whether he
threatened Flatow:

I was mad
when I went over there to talk to Virginia [Flatow], so I took my...pistol with
me when I got over there.  I wouldn=t have hurt her with the gun and she knows
that.  I know that it was stupid for me
to take the gun with me like I did. 

 

 When I got there, I used the key to get into
the house.  I went inside and I talked
to Virginia.  I ended up giving her the
gun after we talked, and then I left.  I
never threatened her with the gun.

 

Even if
trial counsel=s actions fell below an objective standard of
reasonableness, which we  do not find,
there is no reasonable probability that the outcome of the case would have been
different if appellant had testified. 
Appellant=s third point of error is overruled.

The
judgment of the trial court is affirmed.

 

JIM
R. WRIGHT

September 25, 2003                                                                 JUSTICE

Do not publish.  See TEX.R.APP.P. 47.2(b).

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.