11th Court of Appeals
Eastland, Texas
Opinion
 
Ruben Ortiz, Jr.
            Appellant
Vs.                  No. 11-04-00146-CR -- Appeal from Dawson County
State of Texas
            Appellee
 
            Ruben Ortiz, Jr., appellant, appeals his conviction of possession with intent to deliver a
controlled substance, cocaine, having a weight of 4 grams or more but less than 200 grams. TEX.
HEALTH & SAFETY CODE ANN. § 481.112 (Vernon 2003). The jury assessed his punishment
at 60 years confinement and a $5,000 fine. Appellant’s sole point of error is that he was denied his
right to counsel because his trial counsel did not adequately confer with him prior to trial. After his
trial, appellant hired new counsel and filed a motion for new trial based on his right to counsel. After
a hearing on the motion, the trial court denied the motion. We affirm.
            Appellant argues that he was deprived of his right to counsel by his attorney’s failure to
consult with him in private sufficiently in advance of the proceedings to allow for adequate
preparation of his defense as required by TEX. CODE CRIM. PRO. ANN. art. 1.051(a) (Vernon 
2005). Section 1.051(a) provides:
            A defendant in a criminal matter is entitled to be represented by counsel in
an adversarial judicial proceeding. The right to be represented by counsel includes
the right to consult in private with counsel sufficiently in advance of a proceeding to
allow adequate preparation for the proceeding.
 
Appellant’s issue on appeal is an “ineffective assistance of counsel” claim. 
Standard of Review
            To determine whether appellant’s trial counsel rendered ineffective assistance at trial, we
must first determine whether appellant has shown that counsel’s representation fell below an
objective standard of reasonableness and , if so, then determine whether there is a reasonable proba-bility that the result would have been different but for counsel’s errors. Strickland v. Washington,
466 U.S. 668 (1984); Hernandez v. State, 988 S.W.2d 770 (Tex.Cr.App.1999); Hooks v. State, 73
S.W.3d 398 (Tex.App. - Eastland 2002, no pet’n). The burden of proving ineffective assistance rests
with appellant. Moore v. State, 694 S.W.2d 528, 531 (Tex.Cr.App.1985).
            Because appellant’s motion for new trial and its hearing dealt with the issue of ineffective
assistance of counsel, we have a fully developed record to make our determination. At the hearing,
appellant did not show that his trial counsel’s representation fell below an objective standard of
reasonableness; and he presented no evidence that, even if the first prong was satisfied, he was
harmed by anything his counsel did or failed to do. 
Background Facts
            DPS Trooper Ronald Mann observed appellant driving 75 miles per hour in a 70 mile-per-hour zone with an unrestrained child in the backseat. Trooper Mann stopped appellant; and, as he
talked with appellant, he noticed a black bag containing a white rock powder sticking out of a side
pocket. Trooper Mann asked if he could search appellant’s car, and appellant consented. Trooper
Mann found what appeared to be a significant amount of cocaine and arrested appellant. After
appellant was arrested, Dawson County Deputy Johnny Ortegon met with appellant. During this
meeting, appellant was advised of his Miranda rights,


 voluntarily waived those rights, and confessed
to buying and possessing cocaine. The grand jury indicted appellant on two counts: (1) possession
with the intent to deliver cocaine and (2) possession of cocaine. 
            The trial court appointed Arthur Aguilar, the attorney under contract with Dawson County
to handle indigent cases, to represent appellant. Aguilar has a standing arrangement with another
qualified attorney, David Mark Skelton, to help handle cases when needed. The Dawson County
Commissioners have approved this arrangement.
            At the hearing on appellant’s motion for new trial, Aguilar and Skelton testified at length
regarding their representation of appellant. Aguilar testified that appellant was initially contacted
by telephone for an intake procedure where appellant was asked about such matters as his prior
history, if he had any witnesses (he had none), and if he wanted anyone else to visit with Aguilar
about the case. Aguilar said that he received a call from Skelton at one point that a pretrial hearing
for appellant was being held, but Aguilar had not received a notice of the hearing. Skelton was in
the court at the time, and Aguilar asked him to represent appellant that day. The pretrial hearing was
postponed, but Skelton visited with appellant for 30 minutes to an hour about the case. At that time,
Skelton reviewed with appellant the discovery matters the State had furnished. Skelton testified that
he recognized appellant that day, which was over a month prior to trial, because he had attended an
earlier meeting between appellant and Aguilar. Aguilar did not remember that earlier meeting
involving Skelton, appellant, and himself; he thought that his first personal visit with appellant was
at voir dire.
            Aguilar acknowledged that he had not filed a lot of pretrial discovery motions but said that
he believed they were unnecessary. Because of his working relationship with the district attorney’s
office, all he had to do was ask for any information that he knew the trial court would order the State
to provide. The State had faxed him “a lot of that information” in this case. He stated that the State
had advised him of its expert witness and the gist of the expert’s proposed testimony. The State also
provided him its list of witnesses and its notice of intent to offer extraneous offenses more than 20
days prior to trial. Aguilar said that the State’s expert planned to testify that the amount of cocaine
possessed by appellant, 14 grams, indicated that appellant had an intent to sell the cocaine to others. 
Aguilar did not believe that it was necessary to ask the court to provide an expert to counter that
opinion; they planned to thoroughly cross-examine the expert and argue that this was simply a
“possession” case and that appellant had taken responsibility for possession. Both attorneys stated
that discovery was not a problem and that nothing during the State’s case surprised them.
            Aguilar conducted the voir dire of the jury on a Monday, and the trial began on the following
Thursday. Aguilar visited with appellant about the facts of the case that day. Skelton tried the case
for appellant, and appellant had no objection to Skelton trying the case. Although Aguilar could not
attend the trial, both attorneys said that they were ready for the trial and that it was not necessary for
Aguilar to be there. Both said that they had tried 10 to 15 cases together the previous year, that they
were familiar with how each did a voir dire and tried a case, that they met almost daily to discuss
their cases, and that they had discussed and agreed on a strategy for appellant’s case. Both attorneys
stated that they knew the issues that they planned to discuss with the jury. Skelton testified that they
had agreed with the State on the jury charge prior to trial.
            Aguilar pointed out that it was a difficult case to defend because appellant had been caught
in a car with drugs and “signed a full written confession admitting that it (sic) was his drugs.”
Aguilar said that they would have entertained any plea offers, but there were none.
            Skelton spent over an hour with appellant before his trial began. When the trial began,
appellant pleaded “guilty” on Count 2 (possession) and “not guilty” on Count 1 (possession with
intent to deliver). After the jury went out, the trial court admonished appellant with respect to his
plea of guilty: 
            THE COURT: I would ask you, [appellant], did you -- do you fully
understand the consequences of your plea of guilty?
 
            [APPELLANT]: Yes, ma’am.
 
* * *
 
            THE COURT: Had you talked with your attorney prior to entering that plea
of guilty?
 
            [APPELLANT]: Yes, ma’am.
 
* * *
 
            THE COURT: I would ask the [appellant’s] attorney, have you visited with
your client concerning the consequences of this trial, of this proceeding, of the
possibility on both of these counts in the indictment, as well as the enhancement
paragraph?
 
            [DEFENSE COUNSEL]: I have, your Honor.
 
            The trial proceeded on Count 1. Skelton made an opening statement, rigorously cross-examined witnesses, made proper objections, and made a competent closing argument. The jury
found appellant guilty of Count 1 and, as instructed by the court, also found him guilty of Count 2. 
During the punishment stage, the State presented evidence of appellant’s bad reputation as a peaceful
and law-abiding citizen and of his previous felony and misdemeanor convictions. Skelton cross-examined witnesses, called witnesses, and again made a competent closing statement.
            After reviewing the entire record, this court finds that neither attorney’s representation of 
appellant in this case fell below an objective standard of reasonableness. The attorneys were
knowledgeable about appellant’s case, had a viable strategy, and vigorously implemented that
strategy. Moreover, appellant has not shown how additional private meetings between appellant and
his attorneys would have affected the outcome of this case. See Harling v. State, 899 S.W.2d 9
(Tex.App. – San Antonio 1995, pet ref’d); Perrett v. State, 871 S.W.2d 838 (Tex.App. – Houston
[14th Dist.] 1994, no pet’n). We overrule appellant’ sole point of error.
This Court’s Ruling
            The judgment of the trial court is affirmed.
 
                                                                                    TERRY McCALL
                                                                                    JUSTICE
 
August 25, 2005
Do not publish. See TEX.R.APP.P. 47.2(b)
Panel consists of: Wright, J., and McCall, J.