**Affirmed and Memorandum Opinion filed August 9, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00077-CR

---

**DARLEN SCHNEXNAIDER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law No 2**
**Fort Bend County, Texas**
**Trial Court Cause No. 10-CCR-150286**

---

## MEMORANDUM OPINION

Appellant, Darlen Schnexnaider, appeals her conviction for assault, family violence. Tex. Penal Code Ann. § 22.01(a)(1) (West 2011); Tex. Fam. Code Ann. § 71.004 (West 2008). In her first issue, she argues that the evidence was insufficient to

support her conviction. In her second issue, she argues that the trial court committed jury charge error. We affirm.

## Background

On June 4, 2010, Officer Stephen Clarke of the Rosenberg Police Department responded to a call from dispatch about a home invasion in progress. While en route to the scene, Officer Clarke learned that the person calling in the incident reported "it was her sister that was in the house and she had broke a window to get into the house and she was trying to get a gun." Officer Clarke stated that when he arrived at the home a woman approached him saying, "She's inside. She has a gun." Officer Clarke, along with two other Rosenberg police officers ordered appellant to come out of the house. Officer Clarke testified that appellant eventually complied and he placed her in handcuffs. Once the house was "cleared," another officer took appellant's statement.

Officer Clarke testified that the front bedroom window was broken and that just inside the window were "yard stones" on the floor. He testified that it appeared two yard stones were missing outside, that one was found on the bedroom floor, and the other was outside the bedroom window but broken into a couple of pieces. Officer Clarke stated that in going through the house and documenting it by photograph they found a small black handgun in appellant's room.

The State then called Galyn Schnexnaider to testify. Galyn testified that she and appellant are sisters, and that their mother's name is Leona. Galyn described the home as having a front part and a back part. The front part of the house includes two bedrooms, a bathroom, and patio. The back part of the house includes two bedrooms, a game room, and a two car garage.[1] Galyn stated that her mother and father had title to the land and the house, but that when her father died he left it to her mother. Galyn also testified that

---

[1] Later testimony was inconsistent about where the "boundary" was between the "front" and the "back" part of the home.

2

appellant had been staying with their mother and that their mother wanted appellant to leave.

Galyn testified that on the day of the incident, Leona was in the front part of the house. Galyn stated that when she arrived at the house, Leona was already in the front part and that she "didn't know how she got there." Galyn said that she thought Leona had been in the front part of the house for twenty to thirty minutes, searching for money that had gone missing. Galyn testified that she then heard the sound of glass breaking in a nearby bedroom. She stated that she next saw appellant in the hallway with a stick in her hand. Galyn said that appellant then pushed Leona aside with the stick and injured Leona's leg. Then appellant "took off" towards appellant's room, which apparently caused Leona concern that appellant was going for a gun.

Galyn testified that at some point after this initial confrontation with appellant, appellant re-engaged Leona. Galyn said that "[S]he went to shove my mom and when she did I … jerked her down like this, and from here I drug her to the hallway and that's when she bit me." Galyn stated that she was "fearful for her mother" when she grabbed appellant by her hair. On the day of the incident, Galyn was wearing "denim capri jeans." The State introduced photographs of the bite mark on Galyn's left leg into evidence. The photographs were taken twenty-four to forty-eight hours after the incident and show the wound on Galyn's leg. Galyn testified that the mark she received on her leg was inflicted through the denim capri jeans she was wearing at the time. She further stated that the bite lasted "[a] minute maybe; long enough for me to drag her in there and holler at my brother to come in there and get her off of me because the whole time she was biting me." Galyn said that when she was bit "it stung real bad," and that she still has a mark on her leg from it. Galyn then showed her scar to the jury.

On cross-examination, appellant attempted to get Galyn to admit that she was biased in her testimony because of Galyn's interest in moving in with Leona. Galyn refused to acknowledge any such bias or that she was attempting to get appellant out of

3

the house so that she could move in. Galyn did admit that she was currently living with Leona in the home because "mother is scared to death to stay alone."

The State called Officer John Delgado of the Rosenberg Police Department. Officer Delgado testified that he also responded to the call from dispatch about a home invasion in progress. Officer Delgado said that he took appellant's statement about the events. He testified that in appellant's statement, she said that she went to get her gun "because of her brothers." Appellant's statement was admitted into evidence and published to the jury.

On cross-examination, Officer Delgado stated that he did not remember seeing any marks on appellant's chin, but that appellant complained that her brother, Bart, had struck her on the chin. Officer Delgado testified that appellant refused treatment from the "EMS" that was there. He did not remember appellant complaining about any injury to her head or neck, or that appellant was transported to the hospital later that evening. Officer Delgado also stated that Bart, appellant's brother, told him that he was not present at the start of the confrontation between appellant and Galyn, but that he heard the commotion and came in to restrain appellant. Officer Delgado also admitted to a mistake in his police report that "Leona was struck repeatedly with a board." Instead, Officer Delgado stated that he was informed later that appellant had only struck Leona once with a stick. Officer Delgado testified on cross-examination that while he was responding to a home invasion call, it turned out not to be a home invasion. He stated further that appellant was not charged with burglary and that the home was her "legal residence." Finally Officer Delgado testified that appellant said in her statement to him that "just going to protect herself and get them out of her house."

Next, the State called Leona Schnexnaider to testify. Leona testified that she has five children—including two daughters, Darlen and Galyn. Leona stated that on the day of the incident, appellant broke a window in the front bedroom of the house and came through it. She said that appellant came through the window and hollered to Leona to

4

"get out of her house." She testified that appellant then came at her and hit her with the stick, injuring Leona's leg in the process. At that point Leona yelled to Galyn that appellant was "going to get that gun," to which appellant responded that she had more than one. Leona stated that appellant, Leona's youngest daughter, had been living at her house since 2003, had never paid rent nor any of the bills, and that they do not have the "best of relationships."

On cross-examination, Leona testified that she got into appellant's part of the house by taking the door off of its hinges, despite the fact that the door was locked and nailed shut. Leona testified that she used a key to unlock the door, and used another key to unlock appellant's bedroom door. She also stated that appellant's chin was bleeding when she saw her, but that she thought she had cut it coming through the window.

The State's final witness was Sergeant William Henry of the Rosenberg Police Department who testified that he was also one of the first to arrive on the scene and helped to take statements from witnesses. After appellant examined Sergeant Henry, the State rested its case. Appellant then made her opening statement and called ten witnesses, many of whom had already testified.[2] Appellant's first witness was Detective Phillip Burch of the Rosenberg Police Department. Appellant questioned Detective Burch on why he made a supplemental report to his original report and how the officers at the scene managed to find the gun in appellant's bedroom. Appellant also used Detective Burch's testimony as a method of getting the "dash cam" video admitted into evidence.

Appellant then called Jeremy Bostic of the Rosenberg Police Department. He testified that on March 11, 2010 he responded to an incident at the Schnexnaider house. He testified that he was responding, initially, to a call of "injury to an elderly." He stated that no arrests were made and that there was no offense or report. He further stated that

[2] Appellant recalled Sergeant Henry, Galyn Schnexnaider, Officer Delgado, Leona Schnexnaider, and Officer Clarke.

there was no evidence of anything occurring. Next, appellant called Amanda Vossberg, a 911 Dispatcher for the Rosenberg Police Department. She testified that she took the second 911 call, that she believed she spoke with someone named Galyn, but did not remember much else about the call.

Appellant recalled Sergeant Henry and refreshed his memory with the recording of his voice on the "dash cam." He then testified that when the officers made their initial sweep to make sure nobody else was in the house after appellant exited, appellant's brother Bart told him that the gun was in appellant's bedroom. Sergeant Henry further stated that on his initial sweep he did not see the gun in appellant's room. Appellant also questioned Sergeant Henry about why he took only one gun, the gun found in appellant's bedroom, into custody and not the other guns in the house. Sergeant Henry stated that they took it into custody because "[i]t was used in the situation." Appellant asked if it was possible that it was taken to "boost" the case against her, to which Sergeant Henry responded no.

Appellant called Amber Day, Galyn's daughter, to testify about a fight that appellant and Leona had in December. Amber testified that the fight was about George, appellant's father, being released from the hospital. Amber testified that Leona struck appellant first and appellant struck back. Amber stated that Galyn got between the two and stopped the fight.

Appellant then called Galyn back to testify. Galyn could not recall the events that transpired in December that Amber testified about. Galyn stated that if her mother had been hit she would have remembered that, but she did not remember what happened that day.

Appellant called Officer Delgado to testify. Officer Delgado stated that he could not remember when during the investigation the gun was found, and that he could not say that the "gun made the case." Officer Delgado admitted making the statement to Leona

6

that this could help her in her eviction case against appellant. He further stated that it is part of his job to be non-biased and he did not know why he made the statement. Officer Delgado also testified that he did not know why his microphone stopped working while the "dash cam" was still running.

Next, appellant recalled Leona to testify. Leona stated that there were some items that belonged to her in appellant's part of the house. Leona also testified about another incident in which she and appellant had a physical altercation. Leona stated that during that incident appellant grabbed her around the neck from behind. As her last witness, appellant recalled Officer Clarke. He testified that in his experience, there is not a normal reaction to this type of situation. He stated that it depends on the person involved. After questioning Officer Clarke, appellant rested her case.

The jury found appellant guilty of assault involving family violence and the court assessed punishment at one hundred and eighty days confinement, without a fine. The sentence was probated for a period of twenty-four months.

## ANALYSIS

Appellant raises two issues on appeal. First, she argues that the evidence was insufficient to support her conviction. Second, she contends that the trial court abused its discretion by failing to instruct the jury on appellant's self-defense issues.

### I.    Sufficiency of the Evidence

In her first issue, appellant makes three arguments about the insufficiency of the evidence. First, appellant argues the State failed to establish that appellant intentionally, knowingly, or recklessly caused bodily injury to Galyn by biting her. Second, appellant argues that there is no evidence in the record to substantiate Galyn's injury. Third, appellant contends the State failed to establish that at the time of the offense, Galyn was a

member of appellant's family or household and therefore the evidence was insufficient to support a finding of family violence.

When reviewing the sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality opinion); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *Pomier v. State*, 326 S.W.3d 373, 378 (Tex. App.—Houston [14th Dist.] 2010, no pet.). This court does not sit as a thirteenth juror and may not substitute its judgment for that of the fact finder by re-evaluating the weight and credibility of the evidence. *Isassi*, 330 S.W.3d at 638; *Williams*, 235 S.W.3d at 750. Instead, we defer to the fact finder's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Our duty as a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime. *Williams*, 235 S.W.3d at 750.

In all sufficiency challenges the evidence is measured against a hypothetically correct jury charge. *Fuller v. State*, 73 S.W.3d 250, 252 (Tex. Crim. App. 2002). This is true even where there are no allegations of jury charge error. *Id.* The indictment is the basis of what must be proved, and the hypothetically correct jury charge must be "authorized by the indictment." *Gollihar v. State*, 46 S.W.3d 243, 256 n.20 (Tex. Crim. App. 2002). Thus, "the hypothetically correct charge may not modify the indictment allegations in such a way as to allege 'an offense different from the offense alleged in the indictment.'" *Id.* (quoting *Planter v. State*, 9 S.W.3d 156, 159 (Tex. Crim. App. 1999)).

A person commits assault if the person intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Penal Code Ann. § 22.01(a)(1). "Bodily injury"

8

means physical pain, illness, or any impairment of a physical condition.[3] Tex. Penal Code Ann. § 1.07(a)(8) (West Supp. 2011). An individual acts intentionally when "it is [her] conscious objective or desire to engage in the conduct or cause the result." Tex. Penal Code Ann. § 6.03(a) (West 2011). An individual acts knowingly when she either is "aware of the nature of [her] conduct or that the circumstances exist . . . [or] is aware that [her] conduct is reasonably certain to cause the result." Tex. Penal Code Ann. § 6.03(b). A person acts recklessly when she is "aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." Tex. Penal Code Ann. § 6.03(c). However, the risk must be of "such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id*. Intent does not require proof by direct evidence; it can be inferred from actions, words, and conduct. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2002). The defendant's state of mind is a question of fact that must be found by the jury. *Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003).

Under Texas Family Code 71.003, a family member is an individual related by consanguinity or affinity. Tex. Fam. Code Ann. § 71.003 (West 2008). Two individuals are related to each other by consanguinity if: (1) one is a descendant of the other; or (2) they share a common ancestor. Tex. Gov't Code Ann. § 573.022 (West 2012). Family violence is defined as:

> [A]n act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, [or] assault . . . or that is a threat that reasonably places the member

---

[3] In her brief, appellant argues that the State had the burden to prove that appellant's act "created a substantial risk of death, or caused death, a serious permanent disfigurement, or protracted loss or impairment of the functions of any bodily member or organ." *See Williams v. State*, 696 S.W.2d 896, 898 (Tex. Crim. App. 1985). However, *Williams* cited the statutory definition for serious bodily injury, not bodily injury. *Id.* Here, the State only needed to prove bodily injury, as defined above.

in fear of imminent physical harm, bodily injury, [or] assault . . . but does not include defensive measures to protect oneself; . . . .

Tex. Fam. Code Ann. § 71.004(1).

First, appellant argues that the evidence was insufficient to support a finding of the requisite mental state beyond a reasonable doubt. She contends that it "seems clear from the record that Appellant's state of mind at the time of this incident was one of protecting Appellant's property or homestead." Galyn testified that appellant bit her for a period of one to two minutes. The bite was forceful enough to puncture the skin through denim and leave a scar visible on the day of trial. Given the length of time and severity of appellant's bite, the jury could have rationally found appellant intentionally, knowingly, or recklessly caused bodily injury to Galyn. *See Isassi*, 330 S.W.3d at 638; *Williams*, 235 S.W.3d at 750.

Second, appellant contends that because "there was no evidence presented to substantiate the so called bodily injury," the evidence was insufficient to support the conviction. Appellant contends the State did not admit any medical records, photographs, or any other evidence that would substantiate a claim that Galyn suffered bodily injury. However, there is evidence in the record of the bodily injury inflicted upon Galyn. At trial, Galyn testified appellant bit her leg and continued to do so for at least one minute. Galyn also testified that when she was bit that "it stung real bad." Additionally, pictures taken of Galyn's leg after the incident were admitted into evidence. Lastly, during trial, Galyn displayed the scar from appellant's bite to the jury. Viewing the evidence in a light most favorable to the verdict, the jury could have rationally found bodily injury within the meaning of the Penal Code. *See Isassi*, 330 S.W.3d at 638; *Williams*, 235 S.W.3d at 750.

Finally, appellant argues that the evidence "adduced at trial was not legally sufficient to prove that Appellant assaulted a family member nor [sic] family violence."

However, Galyn testified that appellant and herself shared a common ancestor—their mother, Leona. *See* Tex. Fam. Code Ann. § 71.003; Tex. Gov't Code Ann. § 573.022. Leona also testified both appellant and Galyn were her children. We conclude that a rational jury could have found that the assault was committed by appellant against a member of her family. *See Isassi*, 330 S.W.3d at 638; *Williams*, 235 S.W.3d at 750.

We overrule appellant's first issue.

## II.    Jury Charge Error

In her second issue, appellant contends that the jury charge was erroneous. First, she argues that it was error for the trial court to allow the jury to make the family violence finding.[4] Second, appellant argues that it was error for the court to refuse to submit to the jury her requested instructions regarding self-defense and defense of property.

When reviewing claims of jury charge errors, we first determine whether there was error in the charge. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). If the error was not objected to, the error requires reversal only if the error was so egregious and created such harm that the defendant "has not had a fair and impartial trial." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

_____

[4] This argument was within appellant's sufficiency argument in her brief. However, the State contends, and we agree, that appellant is actually arguing jury charge error. Specifically, appellant argues in her brief:

> Appellant complains that, article 42.013 of the Texas Code of Criminal Procedure places the duty of making an affirmative finding of domestic violence upon the trial judge if "the court determines that the offense involved family violence, as defined by Section 71.004 [of the Texas] Family Code." Finally, under article 42.013 the trial court has no discretion in entering a family violence finding once it determines the offense involved family violence. In this case, the trial court left that decision to the jury as directed in the Court's Charge. Additionally, the trial court did not make a finding in the Court's Judgment And Sentence. The trial court abused its discretion in leaving that finding to the jury, this Court should overturn this trial court's determination as an abuse of discretion. (citations omitted).

11

We determine whether egregious harm exists by considering "the charge itself; the state of the evidence including the contested issues and weight of probative evidence; arguments of counsel; and any other relevant information revealed by the record of the trial as a whole." *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006).

The Texas Code of Criminal Procedure provides that in the trial of an offense against the person, if the court determines that the offense involved family violence as defined by the Family Code, then the court must make such an affirmative finding in the judgment of the case. Tex. Code Crim. Proc. Ann. art. 42.013 (West 2006). Here, the trial court allowed the jury to make this determination by special instruction. The trial court itself did not make an affirmative finding in the judgment that the offense involved family violence.[5] Additionally, appellant did not object to this special instruction to the jury.

Assuming without deciding that the charge was erroneous, we conclude that appellant was not egregiously harmed by the jury's finding. The jury charge otherwise reflects an accurate statement of the law applicable to the case. *See* Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007). The undisputed evidence presented at trial indicated that appellant and complainant were sisters, and thus family members. *See* Tex. Fam. Code Ann. § 71.003. Finally, even without an affirmative finding in the judgment, in a prosecution for a subsequent family violence assault, the State may use extrinsic evidence to prove that the previous assault was committed against a family member. *State v. Eakins*, 71 S.W.3d 443, 445 (Tex. App.—Austin 2002, no pet.); *Goodwin v. State*, 91 S.W.3d 912, 919 (Tex. App.—Fort Worth 2002, no pet.).

---

[5] An affirmative finding is not a recitation of the offense in the judgment, nor is it made and entered when the judgment merely reflects the verdict of the jury that refers to family violence. *See Ex parte Brooks*, 722 S.W.2d 140 (Tex. Crim. App. 1986) (discussing trial court's failure to make affirmative deadly weapon finding in the judgment as required by the Texas Code of Criminal Procedure); *Ex parte Mendez*, 724 S.W.2d 77 (Tex. Crim. App. 1987) (same).

12

Next appellant argues that the trial court "reversibly erred and abused its discretion in denying appellant's request for a jury instruction regarding self-defense and defense of property." She states that "this case represents the type of evidence sufficient to raise a jury question regarding self defense and defense of property."

We must first decide whether there is error in the jury charge. *Posey v. State*, 966 S.W.2d 57, 61 (Tex. Crim. App. 1998). A trial judge has the absolute duty to prepare a jury charge that accurately sets out the law applicable to the case. Tex. Code Crim. Proc. Ann. art. 36.14; *Oursbourn v. State*, 259 S.W.3d 159, 179 (Tex. Crim. App. 2008). However, a trial court does not have a duty to *sua sponte* instruct the jury on defensive issues. *Posey*, 966 S.W.2d at 61; *see also Barrera v. State*, 982 S.W.2d 415, 416 (Tex. Crim. App. 1998) (reiterating that trial court has no duty to put defensive issue in the charge *sua sponte*, including self defense). This is because a defensive issue is not "applicable to the case" for purposes of Article 36.14 unless the defendant timely requests the issue or objects to the omission of the issue in the jury charge. *Posey*, 966 S.W.2d at 61.

At the charge conference, the trial court asked both the State and appellant about any objections they had to the jury charge. Appellant objected "to putting the burden on the Defendant in proving self-defense." The trial court overruled this objection and asked if there were any further objections. Appellant responded, "No sir." It is noted in the record that the charge was read by the court. The jury charge contains a section on self-defense, but does not reference defense of property in any way. Only the charge given to the jury is within the appellate record. There being no indication in the record that a jury instruction on defense of property was requested, nor that its omission from the charge given to the jury was objected to, defense of property did not become "the law applicable to the case" within the meaning of article 36.14.[6] *See* Tex. Code Crim. Proc. Ann. art.

---

[6] Appellant states that "there was a charge conference regarding defense of property that was not recorded by the official court reporter." However, the record must show that the complaint was presented

13

36.14; *Posey*, 966 S.W.2d at 61. Therefore, it was not error to omit such an instruction from the jury charge. *See Posey*, 966 S.W.2d at 61.

Appellant objected at the charge conference that the jury charge improperly shifted the burden of proving self-defense. The jury charge included the following application paragraph in regard to self-defense:

> Now, if you find from the evidence beyond a reasonable doubt that on or about June 4, 2010, in Fort Bend County, Texas, the defendant, DARLEN G. SCHNEXNAIDER, did intentionally, knowingly, or recklessly cause bodily injury to Galyn Schnexnaider by biting her, **but you further find from the evidence, or you have a reasonable doubt thereof**, that at that time the defendant was under attack or attempted attack from the Complainant, Galyn Schnexnaider, and that the defendant reasonably believed, as viewed from her standpoint, that such force and (sic) she used was immediately necessary to protect herself against such attack or attempted attack, and so believing, she bit Galyn Schnexnaider due to Galyn Schnexnaider's unlawful use of force to strike, kick, or pull the defendant's hair, **then you will acquit the defendant and say by your verdict "not guilty."**

(Emphasis added). Self-defense is a defense under section 2.03 of the Texas Penal Code. *See* Tex. Penal Code § 2.03 (West 2005); *Saxton v. State*, 804 S.W.2d 910, 912 n.5 (Tex. Crim. App. 1991). "If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted." Tex. Penal Code § 2.03(d). The above charge properly instructed the jury to acquit if there was a reasonable doubt. Additionally, the court further instructed the jury that the burden of proof beyond a reasonable doubt was on the State, as well as instructed the jury on the presumption of innocence. *See Luck v. State*, 588 S.W.2d 371, 375 (Tex.

---

to the trial court and the trial court ruled on it. Tex. R. App. P. 33.1(a). "To complain on appeal about a matter that would not otherwise appear in the record, a party must file a formal bill of exception." Tex. R. App. P. 33.2.

14

Crim. App. 1979). The trial court did not commit error in overruling appellant's objection to the self-defense charge. *See id.*

We overrule appellant's second issue on appeal.

## <u>CONCLUSION</u>

Having overruled both of appellant's issues on appeal, we affirm the judgment of the trial court.

/s/    Margaret Garner Mirabal
Senior Justice

Panel consists of Justices Seymore, Boyce, and Mirabal.[7]

Do Not Publish — TEX. R. APP. P. 47.2(b).

---

[7] Senior Justice Margaret Garner Mirabal sitting by assignment.